**STATE of Maine**

v.

**Andrew BLACK**

Supreme Judicial Court of Maine.

Argued Sept. 16, 1987.
Decided Feb. 24, 1988.

GLASSMAN, SCOLNIK and
CLIFFORD, JJ.

ROBERTS, Justice.

Andrew Black appeals his conviction of
gross sexual misconduct, 17–A M.R.S.A.
§ 253(1)(B) (1983 & Supp.1987), after a jury
trial in Superior Court, Lincoln County.
Among the issues Black raises, we discuss
only the use of videotaped testimony, the
admission of expert testimony and the suf-
ficiency of the evidence. Because we con-
clude that certain expert testimony was
erroneously admitted, we vacate the judg-
ment.

I.

Black is charged with engaging in a sex-
ual act on or about August 2, 1985, with
one John Doe (fictitious name), who was
not his spouse and who had not attained his
fourteenth birthday. In January of 1987,
John was a patient at the Augusta Mental
Health Institute. On motion of the State
to present John's testimony to the jury by
videotape, the court heard the testimony of
a staff psychologist concerning the harm to
John's emotional and psychological well-be-
ing that would result from a) testifying in
open court and b) testifying in the presence
of Black. John's testimony, which was
presented to the jury at the time of trial,
was videotaped in the presence of a Superi-
or Court Justice and counsel. Black, who
was placed in a separate room, was able to
watch and hear John testify; he was also
able to communicate with his attorney by
means of an intercom device.

Because we vacate the judgment on an-
other ground, we do not address Black's
assertion that his constitutional right of
confrontation was violated by the use of
the videotaped testimony of the victim.
We have recently held that a showing of
unavailability of the witness may present a
sufficient justification for depriving a de-
fendant of face-to-face confrontation, *State
v. Twist*, 528 A.2d 1250 (Me.1987). In
*Twist* the finding of unavailability was
based on clear and convincing proof that
the witnesses' "emotional or psychological
well-being would be substantially impaired

William R. Anderson, Dist. Atty., David
M. Spencer (orally), Asst. Dist. Atty., Wis-
casset, for plaintiff.

Thomas A. Berry (orally), Boothbay Har-
bor, for defendant.

Before McKUSICK, C.J., and
NICHOLS, ROBERTS, WATHEN,

if they were to testify at trial." *Id.* at 1257. The constitutional requirement that the witness be unavailable must be demonstrated to exist at the time of trial. It is not sufficient to establish unavailability at the time of the motion hearing unless that occurs near in time to the trial. Obviously, prior to use of the videotape in any retrial of Black the record must reflect the then status of the victim-witness. Our review of the record made at the motion hearing more than a year ago would serve no useful purpose.

## II.

Prior to the testimony of Kathleen Jillson, a psychiatric nurse at Jackson Brook Institute, the State advised the court that the purpose of her testimony would be 1) to explain to the jury the reason for timing and sequencing inconsistencies in John's testimony, and 2) to describe certain "indicators" or "things that she observed about [John] which . . . are consistent with a child who has been sexually abused." At least the latter purpose established the State's intention to rely on Jillson's testimony in order to identify John as a victim of sexual abuse. The State adheres to that position on appeal. The defense expressly objected to Jillson's testimony on the ground that "there has been no evidence of acceptance in the scientific community on this particular issue."

Under the Maine Rules of Evidence, a qualified expert possessing specialized knowledge may testify in order to *assist* the trier of fact to understand the evidence or to determine a fact in issue. M.R.Evid. 702. The subject matter on which the expert testifies must be one that is not within the common knowledge of the trier of fact, "the expert must be able to provide some insight beyond the kind of judgment an ordinarily intelligent juror can exert." Field & Murray, *Maine Evidence* § 702.1 (1987). Although the proponent need not always show general scientific acceptance, *State v. Williams,* 388 A.2d 500, 503–04 (Me.1978), "in order to be admissible the proffered expert testimony must be demonstrated to have *sufficient reliability* to satisfy the evidentiary requirements of rel-

evance and helpfulness, and of avoidance of prejudice to the defendant or confusion of the factfinder." *State v. Philbrick,* 436 A.2d 844, 861 (Me.1981) (emphasis in original); M.R.Evid. 403, 702. We conclude that part of Nurse Jillson's testimony was admissible and part was inadmissible.

■ The State offered Jillson's testimony in part to explain timing and sequencing inconsistencies in John's testimony. Such testimony may be helpful to the jury because it is not within a lay person's common knowledge that a person who suffers some type of traumatic experience may have difficulty relating that experience in a chronological, coherent and organized manner. We recognize, however, that expert testimony offered to explain inconsistent testimony or conduct of the victim can have the effect of bolstering that person's credibility. Such evidence can have a profound impact on the outcome of the trial, particularly, as in the present case, when the prosecution offers the evidence to establish its case in chief. Consequently, the prosecution may introduce expert testimony to assist the trier of fact in understanding an inconsistency in the victim's conduct or testimony only to rebut an express or implied defense assertion that such inconsistency makes it improbable that either a crime was committed or that this defendant committed the crime.

In the instant case, however, defense counsel extensively cross-examined the victim concerning the timing and sequencing of the unlawful acts Black allegedly performed on him; in so doing, counsel was attempting to show that John's story was incredible and therefore the alleged acts never took place. In this circumstance, the trial court, exercising its discretionary supervision over the order in which evidence is presented, may allow the prosecution to present expert testimony to explain seemingly inconsistent testimony by the victim as part of its case in chief.

Although part of Jillson's testimony was properly admitted, we agree with Black that the court should not have permitted her to testify that the alleged victim of

sexual abuse displayed identifying characteristics in order to show that the child was in fact abused. Whether described in terms of "indicators," "syndromes," "patterns," or "clinical features" the objective of such evidence is to establish on the basis of present conduct that in the past someone has been subjected to a specific trauma. We conclude that the present record fails to demonstrate the scientific reliability of such evidence.[1]

█ Jillson testified that she obtained a baccalaureate degree in nursing science from the University of Maine and a master's degree in child psychology from the University of Westchester. For approximately twenty years Jillson has worked in mental health, primarily with physically and sexually abused children and has taught educational courses and studied to maintain her certification as a clinical specialist. No objection is raised to Jillson's professional qualifications.

Jillson described the type of play therapy and behavioral management utilized in the treatment of sexually abused children, as well as the methods of clinical diagnosis on which professionals such as herself rely. Moreover, she describes certain "indicators" frequently encountered in sexually abused children. These "clinical features of sexual abuse" are relied on by Jillson and other mental health professionals in the context of their therapy programs. As a result of her treatment of John, Jillson expressed her opinion "that a male adult who [John] was in a trust relationship with, an authority figure, surrogate parent or such, had sexually abused [John] by having anal intercourse." Neither Jillson's qualifications nor her methods as a mental health professional are in question. The record, however, does not support the admissibility of her testimony identifying John as a victim of past sexual abuse. The validity of the summary of symptoms encountered in the population of her patients is seriously impaired by selection bias. No comparison testing was done with children who were not victims of sexual abuse to determine whether they also demonstrated like indicators. Her testimony demonstrates no scientific basis for determining that a causal relationship exists between sexual abuse and the "clinical features of sexual abuse," nor is there demonstrated even a positive correlation between the two. In the absence of any demonstration of scientific reliability, we reject the testimony of the mental health expert identifying John as a victim of child sexual abuse.

In support of its position, the State simply relies upon *State v. Anaya,* 438 A.2d 892 (Me.1981) and *State v. Conlogue,* 474 A.2d 167 (Me.1984). Neither case is dispositive of the question before us. In *Anaya,* the defendant offered expert testimony concerning the "battered wife syndrome" to explain conduct of the defendant that seemed inconsistent with her testimony that she feared her boyfriend and thus killed him in self-defense. In *Conlogue,* the defendant offered expert testimony to rehabilitate the retracted confession of his wife. Each of these cases presented unique circumstances affecting the defendant's ability to present a defense. Neither case supports the right of the State to rely on Jillson's testimony to identify John "as the victim of anal intercourse by an adult male authority figure."

### III.

█ Our review of the record reveals that there is no merit in Black's challenge to the sufficiency of the evidence. The

---

**1.** We note that a significant number of jurisdictions have recognized that although an expert may testify in order to explain inconsistent conduct or testimony of the victim, the expert cannot offer an opinion as to the truth of the victim's story. *See People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984) (Expert can testify to rebut misconceptions about presumed behavior of rape victims, but not that rape had in fact occurred); *Colorado v. Hampton,* 746 P.2d 947 (Col.1988) (In order to assist trier of fact and to rebut inferences raised by defendant, expert can testify that typical behavior of rape victims is to delay reporting incident); *State v. Taylor,* 663 S.W.2d 235 (Mo. banc 1984) (Although expert may testify that victim exhibits characteristics consistent with those resulting from rape, he may *not* testify that victim was raped by defendant); *State v. Middleton,* 657 P.2d 1215 (Or.1983) (Expert can testify that it is not unusual for child to recant allegation that he or she was abused by a family member).

testimony of John Doe was sufficient to permit the jury rationally to find beyond a reasonable doubt every element of the offense charged. *State v. Barry*, 495 A.2d 825 (Me.1985).

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.