**STATE of Maine**

v.

**Edward YORK.**

Supreme Judicial Court of Maine.

Argued March 10, 1989.
Decided Sept. 19, 1989.

William Anderson, Dist. Atty. and Leane Zainea (orally), Asst. Dist. Atty., Rockland, for the State.

Lawrence G. Frier (orally), Thomaston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

ROBERTS, Justice.

Edward York appeals from judgments of convictions of three counts of gross sexual misconduct, 17–A M.R.S.A. § 253 (Supp. 1989), entered on a jury verdict in the Superior Court (Knox County, *Chandler, J.*). York challenges as obvious error the use of expert testimony to identify an eight-year-old girl as the victim of intrafamily sexual abuse. We vacate the convictions.

The eight-year-old girl testified that York sexually abused her on three different occasions while he was living with the family in Rockland. The State then presented testimony from Leslie Deveau, a licensed clinical social worker in private practice at the Mental Health Center in Rockland. Deveau possessed a masters degree in clinical social work and was accredited by the Academy of Certified Social Workers. She testified that her license permitted her to diagnose and treat mental illness and emotional disorders, that she had nine years' experience, and that, within the past three years, approximately fifty percent of her caseload involved sex abuse victims.

*Deveau* testified that within her profession there are recognizable characteristics of the sexually abused child, such as being withdrawn, pliable and depressed, or being angry, using provocative language, and exhibiting sexually stereotyped behavior. Deveau was first asked to evaluate the victim in this case by a child care center in 1983, after staff members observed unusually sexualized behavior. Deveau spent several sessions with the victim at an evaluation center in 1983, approximately 30 sessions with her in 1985, and was seeing her at the time of trial.

Deveau testified that the victim fell into that category of sexually abused children who outwardly exhibited sexual behavior. She observed the victim's use of makeup, sexual conversation, sexual play with dolls, inappropriate kissing, and sexual aggression directed toward her mother's boyfriend. She testified that this behavior was characteristic of someone who had been sexually abused within the family and that such behavior would not be demonstrated by someone who had not had that experience. Because York did not object to any of this testimony, he must establish on appeal that its use constituted obvious error. M.R.Crim.P. 52(b); M.R.Evid. 103(d).

In *State v. Black*, 537 A.2d 1154 (Me. 1988), we recognized a distinction between expert testimony concerning counter-intuitive evaluation of victim behavior that may appear inconsistent with the victim's testimony, and expert testimony that purports to establish on the basis of present conduct that in the past someone has been the victim of specific trauma. *Id.* at 1156–57. We held that regardless of how appropriate might be the use of the "clinical features of sexual abuse" in the context of therapy, the use of such features was unwarranted in the context of a criminal trial. *Id.* at 1157. In *Black*, as in the case at bar, the anecdotal clinical experience of the witness lacked any evidence of solid empirical research. Contrary to the State's contention, Deveau's testimony that these "clinical features" are generally accepted in her profession does not establish the scientific reliability of her conclusions. Her testimony only demonstrates that these features may be appropriate for use in clinical treatment.

In *State v. Lawrence,* 541 A.2d 1291 (Me.1988), we applied the principles of *Black* despite the absence of a defense objection. We concluded that to permit jury reliance on unproven scientific techniques to bolster otherwise uncorroborated child testimony would deprive Lawrence of a fair trial. *Id.* at 1293. Although conceptually the proponent of expert testimony could rely on the absence of objection as admitting the adequacy of the scientific foundation for its admission, we tacitly recognized in *Lawrence* that no such scientific foundation is available. Published commentaries often note the absence of solid empirical research regarding child sexual abuse. *See e.g.,* Boresi, *Syndrome Testimony in Child Abuse Prosecutions: The Wave of the Future,* 8 St. Louis U.Pub.Law Rev. 207 (1989).

We do not base our decision on the qualifications of the witness; they are not challenged. We have consistently interpreted M.R.Evid. 702, however, to require more than a qualified witness. The rule requires that expert testimony, to be admissible, must assist the trier of fact and that in turn requires a demonstration of sufficient reliability. In *State v. Nye,* 551 A.2d 844 (Me.1988), we upheld the exclusion of evidence of a psychological study offered by the defense. Appearing in 2 Journal of Interpersonal Violence 27 (1987), the article entitled *Reliable and Fictitious Account of Sexual Abuse to Children* reported a clinical survey of reliable and fictitious allegations. Because the survey was uncontrolled and subject to error in the identification of reliability, the authors suggested that "the results be used as a base for further study and not as a definitive basis for proving that a case is or is not 'true.' (We are aware that our study has already been misused in court for this latter purpose.)" *See Nye,* 551 A.2d at 846. *Cf. State v. Gordius,* 544 A.2d 309, 311 (Me. 1988) (in child sex abuse case defense failed to provide empirical research to establish correlation between investigatory techniques and inaccuracies in reporting); *State v. Michaud,* 513 A.2d 842, 849 (Me. 1986) (medical professional may not testify to legal conclusion that defendant was insane); *State v. Tellier,* 526 A.2d 941, 943 (Me.1987) (expert's testimony that false confessions are a known phenomenon that may occur so abstract, vague and speculative that probative value virtually nil); *State v. Fernald,* 397 A.2d 194, 197 (Me. 1979) (defense failed to demonstrate proffered expert testimony beyond common knowledge).

As in *Lawrence,* the expert testimony in this case was used to corroborate the child's testimony. Aside from some evidence that York had the opportunity to commit the offenses, the testimony of the child was otherwise uncorroborated. The impact of expert testimony in these circumstances is undoubtedly substantial enough to have deprived York of a fair trial. *See State v. Naoum,* 548 A.2d 120, 125 (Me. 1988).

The entry is: Judgments vacated.

WATHEN, GLASSMAN and CLIFFORD, JJ., concur.

HORNBY, Justice, with whom McKUSICK, C.J., joins, dissenting.

I do not agree that the admission of expert testimony like this is such obvious error that we must vacate the judgment even though no objection to the testimony was raised at trial. If that is the result of *State v. Lawrence,* 541 A.2d 1291 (Me. 1988), then we should reconsider *Lawrence.*

The Maine Rules of Evidence contemplate that the trial court should have the first opportunity to decide whether expert testimony is admissible. M.R.Evid. 702. The trial judge makes that determination under M.R.Evid. 104(a), a decision that should be overruled only for clear abuse of discretion or error of law. Field & Murray, *Maine Evidence* § 702.1 at 262 (1987). The abuse of discretion standard ordinarily contemplates both a request to exercise the discretion and a record against which to judge it. But when there is no challenge to the testimony at trial, the party introducing it has little occasion to present extensive foundational evidence and the trial court's attention is not drawn to the need for an

exercise of discretion. Indeed, the proponent risks at least irritating the judge if not boring the jury with lengthy explanations of scientific reliability, data collection, experimental protocols, etc., when no objection to the expert's testimony is presented.[1] The Court's approach puts us, as an appellate court, in the unfortunate position of reviewing a non-event in the trial court—in instances like this where unlike *State v. Black*, 537 A.2d 1154 (Me.1988), the record has not been developed to demonstrate whether the testimony meets the requirements of Rule 702, and the trial court has had no request to exercise its discretion. As the Court candidly recognizes in spelling out the significance of *Lawrence*, what it has really announced is that, as a matter of law, no foundation exists for such evidence. It thus takes the matter completely away from the trial courts and, by its obvious error analysis, requires the exclusion of such testimony even though no one objects. It does so, moreover, with no suggestion of how to prevent that decision from infecting our treatment of expert testimony generally. May parties now challenge on appeal and require us to assess independently the scientific foundation for medical, engineering, chemical and other such testimony where the issue was not even raised in the trial court?[2]

For an appellate court to decide in the abstract that certain types of specialized knowledge are inherently unreliable, as the Court does here, assumes undue confidence in our ability as appellate judges to stay abreast of other professions' literature and learning and reach an independent conclusion. Here, for example, the Court states that "Deveau's testimony that these 'clinical findings' are generally accepted in her profession does not establish the scientific reliability of the conclusions." But without development of the evidentiary record, how does the Court know that general acceptance in Deveau's profession may not in turn have been based upon the empirical research the Court prefers? Even the appellate briefs do not enlighten us, nor do they refer us to any specialized treatises or journals but only to cases and statutes. The Court is effectively taking judicial notice that testimony like Deveau's can never be reliable. Presumably that assertion is based upon the Court's independent reading of law review articles or other case law, in preference to the development of an evidentiary record concerning the underpinnings of the expert testimony. If that is so, then the authority of the Court's conclusion may be open to the same charges the Court levels against the expert testimony here. Moreover, even if the Court happens to be correct on its science, when we reach such a conclusion we unfortunately close the door to consideration of new developments on the topic, even though the specialized knowledge may change with great rapidity. Trial courts will refuse to entertain any such testimony given the appellate ruling, and litigants will have great difficulty in even attempting to show a trial court that the scientific support has changed. To alter the rule we will have to make a new decision, again without development of the record in the trial court and solely upon our own review of the professional literature. Thus, the rule once announced becomes difficult to alter even if the changing data no longer support it. I do not believe that this is what the Rules of Evidence contemplate.

Finally, I resist the suggestion that clinical evidence is somehow inherently inadequate. Trial courts routinely accept clinical testimony from medical physicians concerning such matters as the onset and development of a disease. I am not aware that all such testimony carries with it solid empirical research beyond the clinical experience. Indeed, even in the area of child abuse, it is not unusual for a physician to testify concerning his physical observations

1. The opposing party is given an unfair advantage, for whatever tactical considerations motivate him not to object at trial, he has the comforting certainty that he has reversible error on appeal in any event.

2. I do not see how we can distinguish criminal from civil trials; the relevant evidentiary rules are unified. Although the burden of proof obviously differs, that does not affect the threshold question of admissibility.

of the genitals to conclude that sexual contact did or did not occur, without presenting the results of empirical research aside from his clinical experience. In other contexts, moreover, we routinely accept expert testimony based upon the equivalent of clinical experience. *See, e.g., State v. Gervais,* 394 A.2d 1183, 1187–88 (Me.1978) (detective may testify in a burglary prosecution that "a commonly recognized method of operation for committing burglaries" is the so-called " 'directions technique,' " as that testimony "was relevant and would help the jury to 'appreciate the possible relationship between seemingly innocent acts' ").

What seems to be happening here is that, wittingly or not, appellate courts are in the process of carving out a separate and tougher evidentiary rule for expert testimony in areas where they are skeptical of the science—clinical social work, perhaps the psychology profession or even the social sciences generally. I do not believe that this is an appropriate role for appellate courts to play. We should leave the admissibility of specialized knowledge in these, like all other areas of expert testimony, to the trial courts in the first instance, subject to appellate review on the record where appropriate objection has been made.

In this case, there was no objection to the testimony and no request for an exercise of discretion. The testimony was not the only evidence of sexual abuse. I would find its admission not obvious error and affirm.

