**Audrey L. COOKE, on behalf of minor child**

v.

**Michael NAYLOR.**

Supreme Judicial Court of Maine.

Argued March 7, 1990.
Decided April 13, 1990.

Elizabeth Kelly Ebitz (orally), Adrienne E. Volenik, and Judith W. Thornton, Bangor, for plaintiff.

Charles D. Jamieson (orally), Jupiter, Fla., for defendant.

Before McKUSICK, C.J., and WATHEN, CLIFFORD, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

Defendant Michael Naylor appeals from a protective order entered against him by the District Court (Belfast, *Bradley, J.*) in June 1988 in response to the complaint filed by his former wife Audrey L. Cooke pursuant to the Domestic Protection From Abuse Act, 19 M.R.S.A. §§ 761–770 (1981 & Supp. 1989), on behalf of their minor daughter. Naylor argues primarily that the Act is criminal in nature and that the District Court denied his constitutional rights to a jury trial and other heightened procedural safeguards during the hearings leading to the protective order. He also contends that the District Court in admitting the testimony of medical and psychological practitioners violated the rule laid down in *State v. Black*, 537 A.2d 1154 (Me.1988). We find no merit in any of his contentions and affirm the District Court's order, as did the Superior Court (Waldo County, *Alexander, J.*).

▮ Naylor argues that because certain violations of a protective order entered under the Act are Class D crimes, the Act is criminal rather than civil in nature and that under the Maine Constitution, art. I, § 6, he had a right to a jury trial, confrontation of witnesses, and other procedural safeguards of a criminal trial. In *State v. Anton*, 463 A.2d 703 (Me.1983), we ruled that:

> Whether an offense defined by statute is civil or criminal is primarily a matter of statutory construction.... The statutory scheme must be analyzed to determine whether it is 'so punitive either in purpose or effect as to negate that intention' with regard to the constitutional protection at issue.

463 A.2d at 705–06 (citations omitted). Factors to be considered in the civil-criminal analysis include whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punitive, whether a finding of scienter is necessary, whether it promotes the traditional aims of punishment (deterrence and retribution), and whether the behavior to which it applies is already a crime. *Id.* (citing *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963)). Further, "[i]n theory, a criminal sanction serves to 'punish' an individual for violating a legal norm, while civil sanctions serve to coerce, regulate, or compensate." *Anton*, 463 A.2d at 705–06. *See also State v. Freeman*, 487 A.2d 1175, 1179 (Me.1985). Applying this analysis to the Act, we find the Act plainly civil rather than criminal in nature.

A protective order issued under the Act can range in scope from requiring the defendant to refrain from abusing the movant and to vacate domestic premises, to requiring the defendant to receive counseling, pay child support, or pay costs and attorney fees. 19 M.R.S.A. § 766(1). The order is historically an equitable remedy, very similar to an injunction, *see In re Shane T.*, 544 A.2d 1295, 1297 (Me.1988), that regulates the defendant's conduct with regard to the movant without imposing any punishment per se for that conduct. Further, under the Act a protective order cannot exceed one year in duration, which limitation minimizes any "punishment" aspect in this case of Naylor's enforced separation from his daughter and allows the parties time to file for modification of a divorce decree or to institute criminal proceedings or to negotiate consent agreements. 19 M.R.S.A. § 766(2). Any punishment in the sense of the prehearing arrest and deten-

tion we found problematic in *State v. Freeman* arises under the Act only after a protective order has been issued and that order has been violated and only then comes following arrest for contempt or for a Class D crime, *see* 19 M.R.S.A. § 769.

The protective order at issue in this case essentially enjoined Naylor to obey a consent agreement the parties reached in 1982 and suspended for one year his right of contact with his daughter. His argument that the possibility of criminal sanctions for violation of that order renders this civil statute violative of his constitutional right to a trial by jury in criminal cases finds no support in the case law and legal history of this state.

■■■ Naylor next contends that the testimony of Lawrence Ricci, M.D., Bruce Kerr, Ph.D., and Andrea Gabel–Richards, L.C.S.W., pertaining to the child's physical and psychological state was admitted in evidence in violation of our rule in *State v. Black*, 537 A.2d 1154. Naylor contends that their testimony relied upon "indicators" or "clinical features of sexual abuse" without any demonstration of scientific reliability and therefore was inadmissible under *Black* and its progeny. *See State v. York*, 564 A.2d 389, 390 (Me.1989) (licensed clinical social worker's testimony that alleged victim exhibited "recognizable characteristics of child abuse" was based only upon her own "anecdotal clinical experience" and was otherwise lacking in proof of scientific reliability); *State v. Lawrence*, 541 A.2d 1291, 1293 (Me.1988) (therapist's testimony that an alleged victim of child sexual abuse exhibited "across-the-board behavior for [sexual abuse victims]" could not be admitted in the absence of evidence of "sufficient reliability to satisfy the evidentiary requirements of relevance and helpfulness, and of avoidance of unfair prejudice to the defendant or confusion of the factfinder"). An analysis of the testimony of the three practitioners in the case at bar shows that Naylor's contention is without merit. Their testimony is not the type of evidence excluded by the *Black* rule.

Dr. Ricci testified on the basis of his physical examination of the child, his medical training, his continued involvement in research, and his continuing education in this field among his peers; these, combined with the physically factual nature of his examination and the conclusions factually drawn from the evidence produced by the examination, created a more than adequate foundation for his testimony under M.R. Evid. 702. *See* Field & Murray, *Maine Evidence* § 702.1, at 263–66; § 702.2, at 268–69 (1987). Bruce Kerr testified only as a rebuttal witness to the psychologist called by Naylor who testified to inconsistency in the child's behavior and questioned the child's credibility. In *Black* we expressly declared testimony such as Kerr's to be admissible in rebuttal, ruling that "the prosecution may introduce expert testimony to assist the trier of fact in understanding an inconsistency in the victim's conduct or testimony only to rebut an express or implied inference that such inconsistency makes it improbable that either a crime was committed or that this defendant committed the crime." *Black*, 537 A.2d at 1156. Andrea Gabel–Richards testified that based on her continuing treatment of the child, she had diagnosed her as suffering from post-traumatic stress syndrome. As a licensed clinical social worker, Gabel–Richards is authorized by law to "engage in psychosocial evaluation, including diagnosis and treatment of mental illness and emotional disorders." 32 M.R.S.A. § 7053–A(2)(B) (1988). Gabel–Richards testified that she based her diagnosis on DSM III, a commonly used and recognized authority in the psychological field; there was nothing objectionably anecdotal or scientifically unreliable in the *Black* sense about her testimony. In sum, the expert testimony Cooke offered was well-grounded in established authority and of sufficient reliability to assist the trier of fact, in accord with M.R.Evid. 702.

■■■ We also find no merit in Naylor's other contentions, namely, that the court erred in admitting the child's hearsay statement and in refusing to admit the result of a penile plethysmograph test performed on Naylor. The child testified extensively un-

der oath during the nine days of hearings in this case. Any repetition of her earlier extrajudicial statements through the testimony of others was cumulative evidence; admission of that testimony, if it was error, was harmless. *See State v. True*, 438 A.2d 460, 467 (Me.1981). As to the trial court's exclusion of the penile plethysmograph test, Naylor's own expert testified that the test offers only "probabilities and similarities to pedophilic profiles," and other experts testified that these tests are of questionable reliability even in establishing a correct pedophilic or non-pedophilic profile for the individual undergoing evaluation. In the absence of any proof that this evidence was scientifically reliable or could be of benefit to the trier of fact, we find no error in the court's decision not to admit it. M.R.Evid. 702, 104(a); Field & Murray, *Maine Evidence* § 702.1, at 262.

Finally, we take this opportunity to caution counsel that the protective order sought and granted in this case is not the most efficient use of litigation resources for the final resolution of the controversy between these parties. The Protection From Abuse Act is intended "[t]o allow family and household members who are victims of domestic abuse to obtain effective, *short-term* protection against further abuse...." 19 M.R.S.A. § 761(1) (emphasis added). Any protective order issued under the Act is granted for a limited time only, not to exceed one year, and is subject to interim review at either party's request.[1] *Id.* § 766(2). Cooke instituted this proceeding against Naylor in 1987 essentially for the purpose of enjoining his exercise of the rights of visitation with their minor child that he had been granted under the parties' divorce judgment. Once a temporary order safeguarded the child from immediate harm, this child protective proceeding could have been joined with a proceeding to terminate or modify the father's visitation rights under the divorce judgment. *See id.* § 768(2). In the joint proceedings the District Court could have considered all the lengthy evidence adduced in the proceeding now on appeal and could have brought the whole controversy to a conclusion. The joint proceedings would have provided the parties with a faster and less expensive final resolution of their dispute and would have conserved the resources of our hard-pressed court system.

The entry is:

Judgment affirmed.

All concurring.

---

1. Neither party has asked the District Court to review its protective order in this case. The Superior Court (Waldo County, *Smith, J.*) has extended the protective order through May 15, 1990, nearly two years after its entry.