**STATE of Maine**

v.

**Alan D. PRESTON.**

Supreme Judicial Court of Maine.

Argued Sept. 19, 1990.
Decided Oct. 17, 1990.

R. Christopher Almy, Dist. Atty., Jessie Gunther (orally), Asst. Dist. Atty., Dover–Foxcroft, for plaintiff.

Martha Harris (orally), Paine, Lynch & Harris, P.A., Bangor, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

COLLINS, Justice.

Alan D. Preston appeals from his conviction after a jury trial in the Superior Court (Piscataquis County, *Silsby, J.*) on four counts of unlawful sexual contact in violation of 17–A M.R.S.A. § 255 (1983), two counts of assault in violation of 17–A M.R.S.A. § 207 (1983), one count of gross sexual misconduct in violation of 17–A M.R.S.A. § 253 (1983), and one count of sexual abuse of a minor in violation of 17–A M.R.S.A. § 254 (1983).[1] We vacate the conviction as to one count of unlawful sexual contact, and affirm the remainder.

Mary Preston, the defendant's adopted daughter, testified that the defendant showed her how to shoot a rifle when she was "around 12 or 13" and while doing so he "would brush his hands against my breasts." The jury convicted the defendant on one count of assault on the basis of this incident. When Mary was "around 13," she testified, the defendant came into her bedroom at night on two or three occasions and "would stick his fingers in my vagina." The jury convicted the defendant on three counts of unlawful sexual contact on the basis of these incidents.

■ Mary testified that when she was fourteen and the defendant was with her in the living room helping with her algebra homework, "he had unzipped his pants and he, umm, rubbed his penis on my hand ..." She testified that "when he asked if I wanted to do it, what he was doing to me, I said no. And he said I'm sorry, don't tell anyone about this." The jury convicted the defendant on one count of assault on the basis of this incident.

She further testified to two incidents of sexual intercourse. In June 1988, "I had woken up one morning and I found myself covered with sticky semen on me, and it was on my bed.... I thought it was a dream because I didn't want to believe that my dad would have intercourse with me." About a week later, she woke up and "found him lying on top of me having sexual intercourse with me." The jury convicted the defendant on one count of gross sexual misconduct, one count of unlawful

---

1. All statutory references herein are to the 1983 compilation of Title 17–A. The Legislature has recently amended 17–A M.R.S.A. §§ 251, 253 and 255. P.L.1989, c. 401. Those amendments do not affect this appeal.

sexual contact,[2] and one count of sexual abuse of a minor on the basis of these incidents.

### 1. *Expert Testimony*

■ Preston's primary contention on appeal is that the court improperly allowed the state to introduce the expert testimony of Dr. James Leland Jacobs, a psychologist, who testified as to the occurrence of delayed or piecemeal reporting by victims of child sexual abuse, and to the occurrence of dissociative states in trauma victims, including victims of child sexual abuse. Preston contends that this testimony lacked a proper scientific foundation, and improperly bolstered Mary's credibility with the jury.

■ We review the court's preliminary rulings on expert testimony[3] for abuse of discretion. *See State v. Melvin*, 390 A.2d 1024, 1028 (Me.1978). The court could reasonably have concluded that the testimony was adequately supported by general acceptance within the expert community; Dr. Jacobs testified both to abundant clinical literature and to his own clinical experience. *See State v. Williams*, 388 A.2d 500, 504 (Me.1978). Indeed, Preston's expert witness, Dr. Lazare, confirmed this point.

We have repeatedly expressed concern about the admission of expert testimony with regard to "indicators" or "syndromes" of sexual abuse. *State v. York*, 564 A.2d 389 (Me.1989); *State v. Lawrence*, 541 A.2d 1291 (Me.1988); *State v. Black*, 537 A.2d 1154, 1157 (Me.1988). *See* Lipez, *The Child Witness in Sexual Abuse Cases in Maine: Presentation, Impeachment, and Controversy*, 42 Me.L.Rev. 283, 305–307 (1990). However, Dr. Jacobs did not testify that Mary's delayed and piecemeal reporting of the incidents was an indicator that her allegations of sexual abuse were true: in fact, he stated on cross-examination, "—

that a person delays reporting, that's no indication that a person is or did or did not have that experience. That would not be a good measure for truth telling." Similarly, he stated, "it's no indicator if a person has a dissociative state that they were sexually abused."

Dr. Jacobs merely described the phenomena to the jury and testified that they were recognized occurrences. Thus, his expert testimony did not fall within the area of concern enunciated in *York, Lawrence,* and *Black.* Instead, it was "expert testimony concerning counter-intuitive evaluation of victim behavior that may appear inconsistent with the victim's testimony." *York,* 564 A.2d at 390. This testimony was admissible "to rebut an express or implied defense assertion that such [counter-intuitive behavior] makes it improbable that either a crime was committed or that this defendant committed the crime," even though it may also have had "the effect of bolstering [the victim's] credibility." *Black,* 537 A.2d at 1156. *See* Lipez, 42 Me.L.Rev. at 305–307, 331–332, 340.

Preston asserts, however, that Dr. Jacobs should not have been allowed to testify about the occurrence of delayed or piecemeal reporting, or about dissociation, without demonstrating that he had examined Mary and found that she exhibited those phenomena. Mary's testimony provided an ample foundation on that point. A requirement that the expert witness link the phenomena he describes to his personal examination of the alleged victim would run headlong into our ruling in *Black,* prohibiting expert testimony "to establish on the basis of present conduct that in the past someone has been subjected to a specific trauma." *Id.* at 1157. We therefore de-

---

**2.** Count VIII charged unlawful sexual contact arising out of one of the incidents of sexual intercourse. The State conceded at oral argument that no evidence was presented to the jury to establish sexual contact beyond that involved in the sexual intercourse charged in another count. Accordingly, an acquittal is directed on Count VIII. *See State v. Nye,* 551 A.2d 844, 846 (Me.1988).

**3.** M.R.Evid. 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

cline to adopt Preston's suggested requirement.

■ Preston also contends on appeal that the court improperly excluded the expert testimony of Dr. Charles Robinson regarding Mary's allegedly abnormal propensity to fantasize, to the point of delusion, about sexual matters. The court excluded that testimony for irrelevancy and lack of foundation; we review only for abuse of discretion. *See State v. Melvin,* 390 A.2d at 1028. The only foundation Preston offered for this area of testimony consisted of Mary's diary and a letter that she wrote jointly with a friend, both of which concerned her relationship with a boy. Mary testified that her diary entries about going out on dates were "wishful thinking." The letter purported to tell the boy she was breaking up with him. We are unable to say that the court abused its discretion in finding these documents an insufficient basis for Dr. Robinson's proffered testimony that Mary tended to fantasize to the point of delusion.

■ Preston also contends that the court abused its discretion in excluding the expert testimony of Dr. Aaron Lazare concerning histrionic personality disorders. Because Preston proffered no evidence to show that Mary could have suffered from such a disorder, the court did not abuse its discretion in finding the proffered testimony irrelevant. *See State v. Lewisohn,* 379 A.2d 1192, 1203 (Me.1977). The testimony would have been merely cumulative in any case, because both Dr. Jacobs and Dr. Robinson testified that dissociative reactions could result from many causes other than sexual abuse, including histrionic personality disorder.

## 2. *Documentary Evidence*

■ Preston contends that Mary's diary, which was allowed into evidence, should have been allowed into the jury room. The diary was impeachment evidence, and the relevant portions were read to the jury. We are thus unable to say that the court abused its discretion in refusing to allow it into the jury room. *See State v. Fenderson,* 449 A.2d 381, 384 (Me.1982); Field &

Murray, *Maine Evidence* (2d ed.1987), § 611.7 at 241.

■ Preston also contends that the letter jointly written by Mary and her friend should have been allowed in evidence. The court excluded the letter as irrelevant. "A ruling on relevancy is not reviewable except for an abuse of discretion." *State v. Bisson,* 491 A.2d 544, 549 (Me.1985). Preston's attorney offered the letter as relevant to three issues. First was whether Mary's friend believed Mary's stories about having a boyfriend. The letter could not have discredited the testimony of either Mary or her friend, because it was consistent with both. Moreover, Preston's attorney elicited testimony on this issue without using the letter. No prejudice appears present here; the court did not abuse its discretion in excluding the letter as to this alleged basis of relevancy. *See* Field & Murray, § 607.4 at 207–210.

Second was the possibility that Mary actually had a sexual relationship with the boy, contrary to her testimony that she had never had sexual relations with anyone but Preston. The court found that the letter contained "no evidence whatsoever" relevant to such a claim. The only language in the letter even colorably supporting such a contention is the sentence: "I just don't want you to think I used you." Preston offered no evidence on this point other than the letter and the diary. Thus, the foundation present in *State v. Davis,* 406 A.2d 900 (Me.1979) (undue sexual curiosity of complainant) and *State v. Nelson,* 399 A.2d 1327 (Me.1979) (prior sexual intercourse) was lacking here, and the court did not abuse its discretion in ruling the letter irrelevant on the issue of Mary's alleged sexual experience with the boy.

Third was Mary's allegedly abnormal propensity to fantasize. The court found nothing in the letter which suggested abnormality or delusion, nor do we. In this connection, Preston offered the letter to show "the parallel between this letter and the other letter in this case." However, the "other letter," written by Mary to the defendant, was excluded from evidence

upon Preston's objection. No abuse of discretion is apparent in the exclusion of the letter on this issue.

### 3. *The Meaning of "Unconscious"*

■ Preston contends that the court committed reversible error in refusing to give a requested jury instruction as to the meaning of the term "unconscious" as contained in 17–A M.R.S.A. § 253(2)(D) (1983) [4] and 17–A M.R.S.A. § 255(1)(B) (1983).[5] Preston requested an instruction that "asleep does not mean unconscious. Unconscious is something different than asleep." The court declined, and instructed the jury that the term "unconscious ... means what it says."

We have not previously been called upon to construe the term "unconscious" as used in these two statutes. The underlying policy of the statutes is to prohibit sexual relations not entered into on a knowing and voluntary basis. *See, e.g., State v. Dipietrantonio*, 152 Me. 41, 46, 122 A.2d 414 (1956).

Courts in other jurisdictions that have considered this issue have concluded that sleep is within the meaning of the term "unconscious." *E.g., State v. Curtis*, 144 Wis.2d 691, 424 N.W.2d 719, 721 (1988) (construing sexual assault statute; " 'unconscious' ... is a loss of awareness which *may* be caused by sleep"); *Johnson v. State*, 186 Ga.App. 891, 369 S.E.2d 48, 49 (1988), *cert. den.*, 186 Ga.App. 918 (1988) ("sexual intercourse with a woman who is temporarily without will, due to unconsciousness arising from sleep, is rape"); *In re Childers*, 310 P.2d 776, 778 (Okla.1957) (construing rape statute; "unconscious" includes asleep because sleeping woman "is

incapable of exercising any judgment"); *State v. Stroud*, 362 Mo. 124, 240 S.W.2d 111, 112–113 (1951) ("Carnal connection with a woman asleep is rape, because the act is without her consent.").

We conclude, on the basis of the legislative policy underlying the Maine statutes and the construction given the term "unconscious" in other states, that the court committed no error in refusing to give the requested instruction.

### 4. *Sufficiency of the Evidence*

■ Preston asserts that the evidence was insufficient to support his conviction because it was based on Mary's uncorroborated testimony, which he characterizes as incredible and unreliable. Contrary to his assertion, Mary's testimony "was not so contradictory, unreasonable, incredible, or lacking in common sense that it could not sustain the verdict." *State v. Whiting*, 538 A.2d 300, 302 (Me.1988). Her testimony contained no objective impossibilities nor any gross, unexplained self-contradictions. Moreover, there is no requirement that the testimony of a victim of sexual abuse be corroborated. *See* Lipez, 42 Me.L.Rev. at 300–304.

### 5. *Improper Argument*

■ Preston asserts that the State's argument and rebuttal were so improper and prejudicial as to deprive him of a fair trial. Because he failed to move for a mistrial, we review for obvious error affecting substantial rights. M.R.Crim.P. 52(b); *State v. Greene*, 512 A.2d 330, 334 (Me.1986); *State v. Crocker*, 435 A.2d 58, 62 (Me. 1981). We find none. The State's argument and rebuttal were limited to facts in

---

**4.** 17–A M.R.S.A. § 253 (1983) states in pertinent part:

> "**§ 253. Gross sexual misconduct.**
> A person is guilty of gross sexual misconduct
>   *  *  *  *  *  *
> 2. If he engages in sexual intercourse or a sexual act with another person, not his spouse, and
>   *  *  *  *  *  *
> D. The other person is unconscious or otherwise physically incapable of resisting and has not consented to such sexual intercourse or sexual act ..."

**5.** 17–A M.R.S.A. § 255(1)(B) (1983) states in pertinent part:

> "**§ 255. Unlawful sexual contact.**
> 1. A person is guilty of unlawful sexual contact if he intentionally subjects another person, not his spouse, to any sexual contact, and
>   *  *  *  *  *  *
> B. The other person is unconscious or otherwise physically incapable of resisting, and has not consented to the sexual contact ..."

**410**

evidence and inferences that might properly have been drawn therefrom. *See* 1 Cluchey & Seitzinger, *Maine Criminal Practice* § 30.2 at 30–4 (1985).

One point deserves further analysis. Mary testified on cross-examination to an incident in which she had thought that the defendant had hit Mrs. Preston, because "all around her lips were black and blue." Mrs. Preston testified that she got a "black eye" when she "walked into the edge of" a truck door in the driveway. Preston's attorney argued to the jury that this conflicting testimony showed Mary's tendency either to fabricate or to misconstrue events. The State's reference to the incident, in rebuttal, was limited in essence to a suggestion that the jury could find Mary's version more credible than Mrs. Preston's. Preston now asserts that the State's discussion of the "black eye incident" was inflammatory and prejudicial. We see no unfair prejudice in the State's comment on this issue.

### 6. *Various Evidentiary Rulings*

On appeal, Preston asserts numerous evidentiary rulings deprived him of a fair trial. Among other things, he contends that the court should have allowed him to introduce evidence that Mary had made prior allegations of sexual abuse, and should have allowed him to impeach her with a transcript of her grand jury testimony. The record discloses that the court ruled in Preston's favor on both of these issues, but that he then failed to introduce the evidence. We therefore find these contentions without merit.

■ At trial, Preston alleged a discovery violation, asserting that a summary of Dr. Jacobs's testimony should have been provided to him. However, he received in discovery a report prepared by Dr. Jacobs. Summaries of prosecution expert testimony are discoverable only where such a report is not available, and only pursuant to a court order. M.R.Crim.P. 16(c)(4). "This provision is an effort to deal with a situation in which discovery would otherwise be frustrated because an expert has not prepared and submitted a report discoverable under Rule 16(b)(2)(B)." 1 Cluchey & Seitzinger, § 16.4 at 16–21. Preston never moved for, nor obtained, any such order, and he did receive the report that he requested pursuant to Rule 16(b)(2)(B). No discovery violation occurred.

We have carefully examined all the other rulings appealed by the defendant, and all the other testimony he now asserts was improperly admitted. Insofar as his contentions have been preserved for our review, we find them without merit.

The entry is:

Judgment affirmed except as to Count VIII.

Judgment vacated as to Count VIII; remanded for entry of judgment of acquittal on that count.

All concurring.