MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2020 ME 74
Docket:         Yor-19-215
Argued:         January 9, 2020
Decided:        May 26, 2020
Revised:        June 23, 2020

Panel:          MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*

## STATE OF MAINE

v.

## NICHOLAS E. WESTGATE

JABAR, J.

[¶1]  Nicholas E. Westgate appeals from a judgment of conviction of five counts of unlawful sexual contact, (Class B), 17-A M.R.S. § 255-A(1)(E-1) (2020), and one count of visual sexual aggression against a child (Class C), 17-A M.R.S. § 256(1)(B) (2020), entered after a jury trial.  We conclude that Westgate received a fair trial with properly admitted expert testimony and a clear guilty verdict.  We affirm the judgment.

---

\* Although Justice Alexander participated in the appeal, he retired before this opinion was certified.  Chief Justice Saufley also sat at oral argument and participated in the initial conference, but she resigned before this opinion was certified.

## I. BACKGROUND

[¶2]  The following facts are drawn from the evidence admitted at trial, viewed in the light most favorable to the State.  *See State v. Graham*, 2015 ME 35, ¶ 2, 113 A.3d 1102.

[¶3]  During the month of June 2009, Westgate committed five separate incidents of unlawful sexual contact and one incident of visual sexual aggression, all against an eleven-year-old victim.

[¶4]  In 2012, Westgate was charged by indictment with five counts of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1), and one count of visual sexual aggression against a child (Class C), 17-A M.R.S. § 256(1)(B).

A.    First Trial

[¶5]   Following several motions to continue the dates set for jury selection and trial, the court (York County, *O'Neil, J.*) held a three-day jury trial in May 2014.  On May 21, 2014, the jury returned a guilty verdict on all counts. Following this first trial, Westgate appealed, arguing that the trial court provided deficient jury instructions.  On September 20, 2016, we vacated the jury's verdict, agreeing that the jury was not properly instructed.  We determined that "[t]he trial court read the indictment to the jury but did not specify what the elements of the criminal charges were, including the element

that the victim must have been under the age of twelve when the conduct occurred." *State v. Westgate*, 2016 ME 145, ¶ 19, 148 A.3d 716.

B.     Second Trial

[¶6]  A second trial began in May 2017.  After deliberations, the jury was deadlocked.  The court (*Douglas, J.*) discharged the jury and declared a mistrial.

C.     Third Trial

[¶7]  The third trial—the one at issue here—took place over three days in October 2018.  Prior to the trial, the court held a motion hearing addressing the State's motion in limine to introduce expert testimony.  The proposed witness was trained in the forensic interviewing of child victims and was the program manager of the Children's Advocacy Center of York County.  The State argued that because the victim had been interviewed by law enforcement, the witness's expertise would help the jury understand and evaluate the interview methods used.  The State indicated that it would not ask the expert witness to testify as to whether the victim was telling the truth.  The court granted the motion in limine, allowing the witness to testify.

[¶8]  On the first day of trial, the State's witnesses testified that the victim disclosed incidents of sexual acts to them.  The witnesses also testified to the

4

victim's manifestations of anxiety, and other changes in her behavior, during the summer when the incidents occurred.

[¶9]  On the second day of trial, the State called its expert witness.[1]  The expert testified that methods of interviewing child victims of sexual abuse had evolved in the past decade.

[¶10]  On the final day of the trial, Westgate testified that he never sexually touched the victim.  At the close of evidence, the court instructed the jury—over Westgate's objection—with the State-requested instruction on lesser-included charges.  The court instructed the jury,

> If the State does not prove beyond a reasonable doubt each and every one of those facts, as I have just outlined them with respect to each particular count, you must find Mr. Westgate not guilty of that particular count or counts.
>
> If you conclude with respect to any of the counts, any or all of the counts in Counts 1 through 5, that the State has proven all but the age, in other words, the State has proven beyond a reasonable doubt that Nicholas Westgate intentionally subjected [the victim] to sexual contact in . . . the summer of 2009 and at the time he was three years—at least three years older than she was and she was not his spouse, but the State has not proven beyond a reasonable doubt that the offense or offenses occurred prior to her 12th birthday but you find that the State has proven beyond a reasonable doubt that for that count or counts that the unlawful sexual contact occurred prior to her 14th birthday, then you would convict Mr. Westgate of the lesser included offense of unlawful

---

[1] Westgate did not cross-examine the witness and did not object to her testimony.

sexual contact against a person under the age of 14 for that particular count or counts.

On the other hand, if you find that the State has not proven beyond a reasonable doubt any one of the facts required to be proven as outlined above with respect to the lesser included offense, including, without limitation, that the offense occurred prior to [the victim's] 14th birthday, then you must acquit Mr. Westgate of the lesser included offense with respect to any particular count or counts.

The court provided similar instructions as to Count 6.

[¶11]  During its deliberations, the jury submitted notes with questions. Specifically, the jury asked for written copies of the six charges, "to be clear on each one." Furthermore, the jury asked, "If we cannot agree on guilty for under 12, will we be then asked about the under 14 charge?" The court, after conferring with Westgate and the State, provided the jury with the written copies of the six charges and responded to the jury's second question with the word, "Yes."

[¶12]  After deliberating for approximately thirty minutes, the jury returned a unanimous verdict finding Westgate guilty of all charges. The jury's verdict was delivered to the court as follows:

THE CLERK: Members have you agreed upon a verdict?

THE FOREPERSON: We have.

JURORS: Yes.

THE CLERK: What say you, Mr. Foreperson, is the defendant Nicholas Westgate guilty or not guilty of the offense of unlawful sexual contact whereof defendant stands charged in Count 1?

THE FOREPERSON: Guilty.

THE CLERK: Guilty or not guilty of the offense of unlawful sexual contact whereof defendant stands charged in Count 2?

THE FOREPERSON: Guilty.

THE CLERK: Guilty or not guilty of the offense of unlawful sexual contact whereof defendant stands charged in Count 3?

THE FOREPERSON: Guilty.

THE CLERK: Guilty or not guilty of the offense of unlawful sexual contact whereof defendant stands charged in Count 4?

THE FOREPERSON: Guilty.

THE CLERK: Guilty or not guilty of the offense of unlawful sexual contact whereof defendant stands charged in Count 5?

THE FOREPERSON: Guilty.

THE CLERK: Guilty or not guilty of the offense of visual sexual aggression against a child whereof defendant stands charged in Count 6?

THE FOREPERSON: Guilty.

THE CLERK: Mr. Foreperson, have you correctly report[ed] the verdict?

THE FOREPERSON: I have.

THE CLERK: So say you, Mr. Foreperson?

THE FOREPERSON: Yes.

THE COURT: So say you all?

JURORS: Yes.

After the verdict was read, the jury was polled at Westgate's request. Westgate made no objections at the reading of the verdict or at any other time before this appeal.

[¶13] On February 5, 2019, the court sentenced Westgate to ten years' imprisonment with all but sixty-eight months suspended on Count 5, with ten years of probation, and concurrent sixty-eight-month sentences on the other four counts of unlawful sexual contact (Counts 1–4). As to the charge of visual sexual aggression, the court imposed a concurrent sentence of two years' imprisonment. The court imposed $210 in fines.

[¶14] On February 7, 2019, the State filed a motion for correction or reduction of sentence. The motion was continued and was later granted on May 6, 2019. The court amended Westgate's sentences for Counts 1 to 4 to increase them from sixty-eight months to ninety-six months. The suspended portion of the sentence on Count 5 was increased to ninety-six months. As to Count 6, Westgate's sentence was reduced to twelve months. Save for those

8

alterations, Westgate's sentence remained unchanged. Westgate timely appealed on May 15, 2019. M.R. App. P. 2B(b)(2)(D).

## II. DISCUSSION

[¶15] On appeal, Westgate argues that (A) the court erred in accepting the jury's verdict, (B) prosecutorial misconduct deprived him of a fair trial, and (C) the court erred in admitting the expert's testimony. We address each argument in turn.

### A. Jury's Verdict

[¶16] Westgate argues that the court erred by accepting the jury's verdict because, he contends, the verdict was ambiguous.[2] Because Westgate did not raise this issue in the trial court—indeed, his attorney contributed to the court's resolution of the jury's questions[3]—we review for obvious error. *See State v. Schofield,* 2005 ME 82, ¶¶ 28-36, 895 A.2d 927; *Clewley v. Whitney*,

---

[2] Westgate seems to characterize this error as a Sixth Amendment violation. Although we have never addressed the issue, the United States Supreme Court has described the right to a particular "level of verdict specificity" as a "due process right [rather] than one under the Sixth Amendment." *Schad v. Arizona*, 501 U.S. 624, 634 n.5 (1991). Whatever the precise source of the right, however, we see nothing problematic in the general proposition that "[i]f the evidence could have supported a conviction for [more than one] offense, and there is nothing in the record to indicate which offense was meant, a verdict of this type is unalterably ambiguous and a conviction on the greater charge cannot stand." *State v. Baillargeon*, 470 A.2d 915, 917 (N.H. 1983) (quotation marks omitted); *see United States v. Cannon*, 903 F.2d 849, 850 (1st Cir. 1990).

[3] The court, the State, and Westgate all participated in developing—and all agreed to—the jury instructions and the answers submitted by the court to the jury's questions.

2002 ME 61, ¶ 10, 794 A.2d 87. "To demonstrate obvious error, the defendant must show that there is (1) an error, (2) that is plain, and (3) that affects substantial rights." *State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032 (quotation marks omitted). "Even if these three conditions are met, we will set aside a jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.*

[¶17] Westgate argues that the verdict here is ambiguous because the jurors could have been referring to either the named counts or their lesser-included charges. We disagree. When the jury asked for clarification of the procedure for considering the lesser-included charge, the court instructed the jurors that if they could "not agree on guilty under 12," they would then "be asked about the under 14 charge." This instruction was sufficient to apprise the jurors that, when the court asked if they had reached a verdict as to the various charges "whereof the defendant stands charged," they were being asked for their verdict as to the named charges, not the lesser-included charges. *See United States v. Cannon*, 903 F.2d 849, 852-53 (1st Cir. 1990). Furthermore, the transcript of the subsequent polling of the jury reflects no equivocation or uncertainty on the part of any individual juror concerning which charges were

being addressed. There was no obvious error. *See Clewley v. Whitney*, 2002 ME 61, ¶ 10, 794 A.2d 87.

B.      Prosecutorial Misconduct

[¶18] Here, Westgate alleges seven instances of misconduct. He objected on two instances, and five went without objection.[4] "The importance of bringing alleged error, including prosecutorial misconduct, immediately to the attention of the trial court is manifested in the standards of review for errors that were objected to at trial and those that were unpreserved." *Dolloff*, 2012 ME 130, ¶ 31, 58 A.3d 1032. When an objection has been made to a prosecutor's statements at trial, we review to determine whether there was misconduct and, if so, whether the misconduct was harmless error. *Id.* ¶ 33.

[¶19] "When an objection has been made to a prosecutor's statements at trial, we review to determine whether there was actual misconduct, and, if so, whether the trial court's response remedied any prejudice resulting from the misconduct." *Id.* ¶ 32 (citations omitted).

[¶20] "Harmful error is error that affects the criminal defendant's substantial rights, meaning that the error was sufficiently prejudicial to have

---

[4] Westgate's five arguments regarding prosecutorial misconduct on questions and arguments made during closing to which he never objected are unpersuasive and we do not address them. *Cf. State v. Scott*, 2019 ME 105, ¶ 25, 211 A.3d 205.

affected the outcome of the proceeding." *Id.* ¶ 33 (quotation marks omitted) (citations omitted). "We determine the effect of error by looking to 'the totality of the circumstances, including the severity of the misconduct, the prosecutor's purpose in making the statement (*i.e.*, whether the statement was willful or inadvertent), the weight of the evidence supporting the verdict, jury instructions, and curative instructions.'" *Id.* ¶ 33 (quoting *United States v. De La Paz-Rentas*, 613 F.3d 18, 25 n.2 (1st Cir. 2010)). "[T]he State has the burden of persuasion on appeal in a harmless error analysis." *Id.* ¶ 39.

[¶21]  Westgate first challenges the State's argument during its closing argument that the victim was eleven when the incident occurred and that she has maintained this statement consistently over several years.  Westgate objected, contending that the prosecution's argument appeared to be witness-vouching.  The court overruled the objection.

[¶22]  As we have previously pronounced, prosecutors cannot vouch for their witnesses.  *State v. Hassan*, 2013 ME 98, ¶ 33, 82 A.3d 86 ("A lawyer shall not state a personal opinion as to . . . the credibility of a witness." (quotation marks omitted)).  Here, because a prosecutor is free to comment on the consistency of a witness's testimony—just as the defense is free to comment on

the inconsistency of a witness's testimony—the prosecutor's statement did not constitute vouching. There was no misconduct.

[¶23] Westgate next argues that the prosecutor committed misconduct by asking him, during cross-examination, whether he attended the victim's mother's funeral. Westgate objected and initially sought a curative instruction—explaining that he could not attend the funeral because of bail conditions restricting him from being near the victim. Westgate answered the question by stating that he was unable to attend, never mentioning that his bail conditions prevented him from attending. At sidebar, the prosecutor explained that he sought to demonstrate that Westgate knew of the death of the victim's mother. Westgate then withdrew his request for a curative instruction. Here, the prosecutor's question regarding Westgate's attendance at the funeral was likely irrelevant and probably improper, but it was also insignificant because Westgate gave an innocuous explanation as to why he did not attend the funeral.

C.    Expert Testimony

[¶24] Lastly, Westgate challenges the admission of the expert testimony regarding forensic interviews of children. "We review a court's foundational finding that expert testimony is sufficiently reliable for clear error, and review

for an abuse of discretion a court's decision to admit an expert's opinion after finding it reliable." *State v. Maine*, 2017 ME 25, ¶ 16, 155 A.3d 871 (citation omitted). "A court abuses its discretion in ruling on evidentiary issues if the ruling arises from a failure to apply principles of law applicable to a situation resulting in prejudice." *Id.* ¶ 23 (quoting *State v. Bennett*, 658 A.2d 1058, 1062 (Me. 1995)).

[¶25] At trial, the State presented expert testimony concerning the protocols for interviewing child sexual abuse victims. Westgate argues that there is a considerable risk that jurors interpreted the expert's testimony as an endorsement—from an experienced interviewer trained to identify sexually abused children—that the victim was truthful. Westgate contends that the unfair prejudice resulting from the expert's testimony substantially outweighed its relevance.

[¶26] "Expert testimony must meet a threshold level of reliability, and must (1) be relevant in accordance with M.R. Evid. 401, and (2) assist the trier of fact in understanding the evidence or determining a fact in issue." *Id.* ¶ 17 (quotation marks omitted). Here, the court provided a detailed analysis in justifying its admission of the expert testimony. Specifically, the court stated,

> [I]f an expert is properly qualified and the field of expertise is a reliable field, then the [c]ourt must determine whether [it is]

relevant and whether it would assist the jury in this case in understanding the evidence or determining a fact in issue.

As to the first issue, as to whether the witness is properly qualified in the fields, her reports and her testimony presented two distinct but related areas of expertise or information; one having to do with general psychological or neurological principles of memory formation and recall, and the second having to do with the—the developing practice of forensic interviewing, which prescribes certain protocols and formats for questioning to elicit in—or elicit from child victims of sexual abuse, perhaps physical abuse but in this case sexual abuse, complete, consistent and reliable answers.

[¶27]  The trial court found that the witness was qualified as an expert in the field of forensic interviewing and that forensic interviewing is an established—though developing—field that has some reliability.

[¶28]  Because the trial court properly analyzed the facts before it as they related to the admissibility of the expert witness' testimony, the court did not clearly err in finding the State's witness to be a qualified expert witness. *See id.* ¶ 21; *see State v. Ericson*, 2011 ME 28, ¶ 12, 13 A.3d 777 (delineating the indicia of threshold reliability); *see also State v. Black*, 537 A.2d 1154, 1156 (Me. 1988) (permitting expert testimony in part to explain timing and sequencing inconsistencies in the victim's testimony)

[¶29]  Because the trial court determined that the expert's opinion would assist the jurors, the trial court's determination as to the evidence it admitted

was reasonable and within the bounds of its discretion. *See Maine*, 2017 ME 25, ¶ 20, 155 A.3d 871 (finding no error in a trial court's admission of expert testimony); *see State v. Bickart*, 2009 ME 7, ¶ 24, 963 A.2d 183; *see also Black*, 537 A.2d at 1156 ("Under the Maine Rules of Evidence [702], a qualified expert possessing specialized knowledge may testify in order to *assist* the trier of fact to understand the evidence or to determine a fact in issue.").

[¶30] As the trial court noted, forensic interviewing techniques may be beyond the knowledge of the average juror. To that end, the court allowed the expert's testimony with respect to the questioning of the victim. However, the trial court did not allow the witness to offer opinion testimony about either the veracity of the victim's testimony or whether the methodologies employed by the prior questioners were scientifically valid methods of truth-seeking.

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Nicholas E. Westgate

Kathryn L. Slattery, District Attorney, and Matthew Richwalder, Asst. Dist. Atty. (orally), Prosecutorial District #1, Alfred, for appellee State of Maine

York County Superior Court docket number CR-2012-1285
FOR CLERK REFERENCE ONLY