**STATE of Maine**

v.

**George A. FERNALD, Jr.**

Supreme Judicial Court of Maine.

Feb. 7, 1979.

Henry N. Berry, III, Dist. Atty., Glenn Robinson, Law Student (orally), Portland, Peter G. Ballou, Deputy Dist. Atty., John H. Montgomery, III, Asst. Dist. Atty., for plaintiff.

Daniel G. Lilley (orally), E. Paul Eggert, Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

Charged by indictment in the Superior Court (Cumberland County) with having committed attempted robbery and aggravated assault, in violation of 17–A M.R.S.A. §§ 651(1)(A) and 208, respectively, defendant George A. Fernald, Jr. was tried before a jury at the beginning of February, 1978 and found guilty as charged. Defendant has appealed from the judgment of conviction entered on the verdict, claiming (1) denial of his constitutional right to a speedy trial and (2) error by the trial Justice in excluding defendant's proffer of purported expert testimony to aid the jury in assessing the accuracy of eyewitness identification testimony given in this case.

We deny the appeal.

1.

On July 2, 1977 two security guards, employees of Brink's, Inc., were making a routine pickup of cash receipts at the Jordan Marsh Department Store in South Portland, Maine. They were accosted by a gunman who sought to obtain a bag of money from one of the guards. Before the effort was frustrated an exchange of gunfire occurred. The gunman fled, leaving behind traces of blood indicating he had been wounded. Later in the day, defendant Fernald appeared at the Maine Medical Center in Portland, where he was admitted for treatment of multiple gunshot wounds. The next morning, one of the guards involved in the shooting incident came to the hospital and identified defendant as the person who had assaulted him. That afternoon defendant was arrested.

Defendant contends that the lapse of seven months between his arrest and the commencement of his trial violates the right to a speedy trial guaranteed him by

the 6th–14th Amendments to the Constitution of the United States. To decide the issue, we must make an evaluation balancing four factors: the length of the interval between arrest and trial, the reasons advanced to explain the length of time between arrest and trial, the timeliness of defendant's assertion of his right to a speedy trial and the prejudice, if any, suffered by defendant because of the time that elapsed before he was tried. *Barker v. Wingo,* 407 U.S. 514, 530, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Catlin,* Me., 392 A.2d 27, 32 (1978).

Addressing, first, the time elapsing between defendant's arrest and his trial, we must exclude the period of twenty days from July 3, 1977 until July 23, 1977 during which defendant was hospitalized for treatment of his multiple gunshot wounds. This period is not chargeable against the prosecution in relation to defendant's claim that he was not given a speedy trial, since it was a period of delay

> "attributable to . . . [defendant's] own actions or to circumstances beyond the control of the prosecution . . .."
> *State v. Lewis,* Me., 373 A.2d 603, 609 (1977)

Defendant did not demand speedy trial until September 9, 1977, not quite two months after the indictment was returned against him on July 13, 1977, and two days after the State, on September 7, 1977, had applied to the District Court for a search warrant seeking authorization for the surgical recovery from defendant's body of metallic bullet fragments. The application for search warrant was heard shortly thereafter, on September 16th, and was denied by the Court on September 29th. On October 4th, the State appealed that decision to this Court, pursuant to 15 M.R.S.A. § 2115–A (Supp.1975). At the State's urging, this Court heard the appeal on an expedited schedule and rendered its decision on January 4, 1978. Defendant's trial began a month later.

In the assessment of whether or not defendant's right to speedy trial was violated, the time consumed by the prosecution's undertaking to have this Court render a decision as to the correctness of the District Court's denial of the application for a search warrant is not chargeable against the prosecution. Nothing suggests even remotely that the interlocutory appeal was a bad faith tactic of the prosecution to impair defendant's right to speedy trial. Rather, the prosecution was taking reasonable steps to develop its evidentiary case against defendant, and throughout the appeal proceeding it acted with promptness. Even though the outcome of the appeal was unfavorable to the prosecution in that the appeal was dismissed for lack of jurisdiction in the Law Court as to the particular issues involved, the Court stated expressly that the issues the prosecution sought to have decided were "fairly litigable." See *State v. Fernald,* Me., 381 A.2d 282, 286, 287 (1978).

While the prosecution's application for a search warrant and its interlocutory appeal from the denial of the application caused approximately five months to elapse between defendant's demand for speedy trial and his trial, defendant suffered no prejudice that the constitutional guarantee of speedy trial aims to avoid: specifically, to

> "prevent undue and oppressive incarceration prior to trial, . . . minimize anxiety and concern accompanying public accusation and . . . limit the possibilities that long delay will impair the ability of an accused to defend himself."
> *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966).

True, during this five month period defendant was incarcerated. Yet, the incarceration was not rendered "undue or oppressive" in the sense that it was an unnecessary period of confinement for which the prosecution was to blame. On October 4, 1977 defendant was granted personal recognizance bail regarding the criminal charges here pending against him. That he did not then go at liberty but remained incarcerated resulted from a parole "hold" placed upon him by corrections authorities. Since

the prosecution had no control over the parole violation proceedings that caused defendant to be incarcerated after October 4, 1977, the prosecution is not responsible for that incarceration.

As another source of special prejudice, defendant argues that had his trial begun on October 5, 1977 as originally scheduled, the prosecution would not have had the benefit, as evidence, of a letter written by defendant on November 15, 1977 which contained statements seriously incriminating him. This argument misconceives the protection, regarding evidence, that the constitutional guarantee of speedy trial provides: protection against *loss of existing* evidence because crucial witnesses die, disappear or leave the jurisdiction or because passage of time erodes the memories of witnesses. *Barker v. Wingo,* supra, at 532. It happened, here, that during the passage of time new evidence against defendant was created. It is not within the scope of the constitutional guarantee of speedy trial to protect against this kind of "prejudice" to a defendant.

On balance, then, we find that the length of the pre-trial delay was not unjustifiably long, the State acted with diligence to minimize the delay, and the delay after defendant had demanded a speedy trial caused defendant no prejudice in terms of the protections the constitutional guarantee of speedy trial is designed to provide.

Defendant was tried at a time consistent with the constitutional guarantee of speedy trial.

### 2.

At trial, both of the Brink's security guards identified defendant as the gunman who accosted them. To show that the guards may have been mistaken in their identification, defendant offered a psychologist, Dr. John Bishop, as an expert witness to testify about the effects of stress on the reliability of human perception. The presiding Justice refused to admit this proffered testimony. In support of his ruling, the Justice relied on *State v. Lewisohn,* Me., 379 A.2d 1192 (1977).

We find no error in the Justice's ruling.

Under Rule 702 M.R.Evid. it is for the presiding Justice to make an initial determination whether the subject-matter as to which purported expert testimony is offered is beyond "common knowledge", so that a juror is in need of the assistance of an expert to evaluate the matter intelligently. See Field & Murray, *Maine Evidence,* § 702.1 (1976). Here, the subject to be dealt with by the expert concerned stress as a factor affecting the reliability of human perception.

We need not now consider, or intimate opinion on, whether *Lewisohn* extends so far as to bar *in all circumstances* expert testimony as to the effects of stress, or other factors, on the accuracy of human perceptional processes to assist a fact-finder in determining the reliability of eyewitness testimony as to persons or objects, static or moving, or as to more complex occurrences or events. It is sufficient for present purposes that we decide that there was no error in the Justice's relying on *Lewisohn* here, in light of the particular circumstances and the nature of the eyewitness testimony involved, to exclude the proffered testimony of a purported expert. The eyewitness identifications resulted from a direct and close, face-to-face confrontation of the two eyewitnesses and the gunman. The light was good, and the gunman's entire face was not obscured in any respect. The making of direct face-to-face judgments of identification, and an awareness of the factors bearing on the reliability of such judgments, are so much a part of the day-to-day experiences of ordinary lay people that we must conclude the presiding Justice exercised sound discretion in ruling, here, that the jury was capable of making an intelligent assessment of the reliability of the identification testimony given by two eyewitnesses, without need of the benefit of expert testimony as to how stress may affect human perceptional processes.

The entry is:

Appeal denied; judgment of conviction affirmed.

POMEROY and NICHOLS, JJ., did not sit.