STATE of Maine

v.

**Victor RICH.**

Supreme Judicial Court of Maine.

Argued Sept. 12, 1988.

Decided Nov. 1, 1988.

Paul Aranson, Dist. Atty., Elizabeth Paine, Law Student Intern (orally), Portland, for plaintiff.

Dennis Levandoski (orally), Kettle, Carter, Henegar, Levandoski & Anderson, Portland, for defendant.

Before WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

CLIFFORD, Justice.

Defendant Victor Rich contends in his appeal from Superior Court (Cumberland County; *Fritzsche, J.*), that his convictions on three counts of criminal threatening with the use of a dangerous weapon, 17–A M.R.S.A. §§ 209, 1252(4) (1983), should be vacated because the trial court improperly excluded his proffered expert testimony on the issue of eyewitness reliability. We affirm the judgment.

In the early morning hours of Sunday, August 16, 1987, three women walking home from Angie's Pub on Commercial Street in Portland were attacked by a man with a knife who said to them, "I only want one thing." One of the victims flagged down a nearby tow truck, but the assailant fled before the tow truck driver could identify him.

Sue Ann Grant, one of the victims, testified that she recognized her assailant immediately. She was certain he was the same person who, about one month earlier, in Angie's Pub, in an intoxicated condition, told her she had pretty hair, offered to buy her a drink and showed her a photograph of himself in Portland Monthly, a magazine, unloading fish. She told the two other victims, Deborah Train and Amanda Peasley, about this when they arrived back in Grant's apartment. On Monday morning, August 17, Grant and Train went to the library and located the photo in the magazine, from which they learned that the man in the photo was Victor Rich, the defendant. Later in the morning, Grant went to the police station with a photocopy of the magazine article. Later, each of the victims was shown separately a photo lineup that included Rich's photo. Grant and Train identified Rich's photo as that of the assailant and identified him at trial. Peasley chose a different photo.

Rich contended that the identifications of him by Grant and Train were mistaken. He testified that he was at home at the time of the attack, and his girlfriend corroborated his story.

Prior to trial, Rich filed a motion to compensate Dr. John Bishop, a psychologist whom Rich intended to call as an expert witness on the subject of eyewitness reliability. Because Rich was entitled to funds for hiring Dr. Bishop only if Dr. Bishop's testimony was admissible, *State v. Gordius*, 544 A.2d 309, 310–11 (Me.1988); *see State v. Anaya*, 456 A.2d 1255, 1263 (Me. 1983), the motion was treated as a motion *in limine* on the admissibility of Dr. Bishop's testimony. Rich made an offer of proof as to the expected testimony of Dr. Bishop. The court determined that the testimony would not be helpful to the jury and denied the motion.

■ M.R.Evid. 702 provides as follows: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under Rule 702, the admissibility of Dr. Bishop's proffered expert testimony turns on the determination by the trial justice as to whether it will assist the trier of fact in understanding the evidence or determining a fact in issue. *State v. Black*, 537 A.2d 1154, 1156 (Me.1988). In order to provide assistance to the jury, the expert testimony 1) must be concerned with a matter "beyond common knowledge so that the untrained layman will not be able to determine it intelligently" without that expert help; and 2) the expert's testimony must be helpful to the jury's understanding. R. Field & P. Murray, *Maine Evidence* § 702.1, at 263 (2d ed. 1987). The trial justice's determination of admissibility of such testimony will be upheld unless it constitutes an abuse of discretion. *State v. Fernald*, 397 A.2d 194, 197 (Me.1979);

*State v. Mitchell*, 390 A.2d 495, 500–01 (Me.1978).

■ On two previous occasions, we have found no abuse of discretion in the trial court's determination that the effects of stress on eyewitness reliability were not beyond the common knowledge of the ordinary juror. We upheld the exclusion of expert testimony offered by defendants on that subject. *Fernald*, 397 A.2d at 197; *State v. Lewisohn*, 379 A.2d 1192, 1203–04 (Me.1977).[1] Rich urges a different result in this case because of the presence of several additional factors all affecting the reliability of eyewitness identification.[2] However, the trial justice is vested with broad discretion and the exclusion of Dr. Bishop's testimony in this case was not an abuse of that discretion. *Fernald*, 397 A.2d at 197; *Mitchell*, 390 A.2d at 500–01.

Moreover, the offer of proof was lacking in another respect. Rich carried the burden of showing not only that the subject matter of the expert testimony, i.e., the effect of certain factors on the reliability of eyewitness identification, was beyond common knowledge, but also that the testimony would be relevant and helpful to the jury. *Gordius*, 544 A.2d at 311. For such testimony to offer an advantage over knowledge generally known to the jury, it must be shown to have "sufficient reliability to satisfy the evidentiary requirements of relevance and helpfulness, and of avoidance of confusion to the jury." *Id.; State v. Lawrence*, 541 A.2d 1291, 1292 (Me. 1988); *Black*, 537 A.2d at 1156. Totally absent from Rich's offer of proof was anything relating to the sources of Dr. Bishop's conclusions, the research or studies on reliability of eyewitness identification and the factors affecting that reliability. Although expert testimony need not always be based on studies or data accepted gener-

---

1. In both of these cases, the expert witness whose testimony was excluded was the same Dr. Bishop whose testimony was proffered here.

2. According to Rich's offer of proof, Dr. Bishop would have testified in this case: 1) that lighting, alcohol and stress caused by a witness being put in danger have been shown to affect the reliability of a witness' identification; 2) that

identification by a witness can be affected by post-incident information, such as the confusion of a person seen in one incident with a person seen in another; 3) that a witness can adopt as her own recollection statements made by another witness; and 4) that certainty expressed by a witness has no relationship to the accuracy of the identification.

ally in the scientific community, *Black*, 537 A.2d at 1156, it must be shown to be sufficiently reliable as to be helpful to a jury; if it offers no advantage over the general knowledge of jurors it is irrelevant. *Gordius*, 544 A.2d at 311. No such indicia of reliability were present here.

The entry is:

JUDGMENT AFFIRMED.

All concurring.