STATE OF MAINE
PENOBSCOT, SS.

ROBERT ARDOLINO,
        Petitioner,

v.

STATE OF MAINE,
        Respondent.

FILED AND ENTERED
SUPERIOR COURT

MAY 1 4 2001

PENOBSCOT COUNTY

SUPERIOR COURT
Docket No. cr-98-430
A.... - PEN - 5/14/...

)
)
)
)    **DECISION AND JUDGMENT**
)
)
)
)

This matter is before the court on the Petitioner's Petition for Post Conviction Relief. Hearing was had on April 23, 2001. Petitioner was present and represented by counsel.

Petitioner addresses several arguments to the court, all of which concern the issue of competency of counsel. The arguments, stated generally, fall into the following categories:

    1. **The audio tapes.** After trial, Petitioner obtained copies of his audiotaped statements which were technologically enhanced to allow greater aural accuracy. He argues that his attorneys should have done this prior to trial.

    2. **Battered Child Syndrome.** Petitioner faults his attorneys for not suggesting alternate sources of bruising to Dr. Ricci and that the admissibility of the syndrome should have been challenged.

    3. **Child suggestibility/ interview techniques.** Petitioner asserts that his attorneys should have offered expert testimony on the subject of suggestibility of children and improper interview techniques utilized by the investigating officers.

The court has had the benefit of reviewing the annotations and enhancements to the original audiotapes as well as the submissions of the parties at and in advance of the hearing date.

The facts of this matter are fairly well developed. The case has been reviewed by the Law Court on direct appeal (State v. Ardolino, 697 A.2d 73 (Me. 1997), and on review of a Motion for New Trial (State v. Ardolino, 723 A.2d 870 (Me. 1999).

I.

Modern technology allows the enhancement of audio tapes by removing unwanted noise and leaving the frequencies of human speech. This ability to "cleanse" the tapes opens the door to different, and presumably better, interpretations of what was said.

This ability has the potential of producing particularly profound results. For instance, an unaltered audio tape may seem to disclose a suspect saying, "I did do it," (ie.- a confession) when an enhanced version might have him saying, "I didn't do it." In such instances, the lack of an enhanced version at trial would clearly affect the outcome of the proceeding in unacceptable way.

In the instant matter, the enhanced version contains a number of instances where the original transcript appears to be in error. In reviewing the impact of trial counsels' failure to obtain an enhanced version upon the outcome of the trial, the court must examine the nature of the differences and omissions. If the differences are as profound as that noted above, clearly counsel would have missed a crucial element of preparation.

In actuality here, most of the changes are utterly innocuous. Petitioner argues that some, like the reference to "...pounding..." instead of "...patting..." and the fact the he made a trip upstairs and would have seen the vomit, are important and would have affected the outcome of the trial.

This court and the Law Court disagree with the Petitioner's sentiment.[1] In each instance, the discrepancy between the enhanced version and the transcript concerns only one point in a much larger set of facts which formed the basis for the verdict. Additionally, it should be noted that the transcript was not admitted into evidence - it was utilized as an aid for the

---

[1] - Note the Law Court's comment at 723 A.2d 870 at 873: "...Ardolino overstates the importance of the transcript in the overall context of the trial...".

jury to follow along in the actual playing of the tape. Furthermore, both the court and counsel felt that the tape was of sufficient quality to be discerned by the members of the jury. The Petitioner, more than anyone, was in a position to know what he actually said and could have clarified and corrected any misconceptions during the course of the trial. Under these circumstances, the court cannot conclude that counsel failed to perform competently  by not objecting to the tape or obtaining an enhanced copy.

## II.

Dr. Lawrence Ricci testified at trial regarding his diagnosis of Battered Child Syndrome with respect to Matthew Ardolino. Petitioner faults trial counsel for not suggesting to Dr. Ricci alternate causes of the bruising and otherwise challenging the admissibility of the syndrome.

Dr. Ricci testified that battered Child Syndrome is a constellation of observations and symptoms based upon observation of injuries which do not ordinarily appear in children and are not otherwise explained. Petitioner offers a number of potential sources for injury to Matthew including falling from a tree (or tree house), fights with neighbors, bicycle accidents, and such. Even accepting these possibilities at face value, the fact that most of the injuries were sustained within the last five days of Matthew's life (as testified to by all of the experts) makes the Petitioner's assertions patently unlikely. Further, even if some of the numerous bruises which encircled his body could be attributed to these innocent causes, the question of the sheer magnitude of the number of bruises would still be unanswered. Counsel was wise to avoid highlighting this issue by wading into an impeachment attempt which was bound to fail.

The diagnosis of Battered Child Syndrome is well established and accepted in the medical field. This diagnosis is beyond the knowledge of the average person and falls within the scope of testimony allowed by Rule 702. Petitioner was allowed to offer expert testimony to suggest that the criteria for the diagnosis of Battered Child Syndrome were not present here. The fact that counsel chose not to preserve an objection to its introduction does not raise a suggestion of incompetence. On the contrary, such testimony is well within the perimeters of the current legal landscape and would have little likelihood of being excluded at the appellate level.

# III

Dr. Maggie Bruck is a psychologist with impressive academic credentials and publications. Although she is not a clinician, she trains researchers and medical school residents at Johns Hopkins University. Her primary research focuses upon issues of memory and cognition in children.

She has conducted research on the methodology of interviewing children. She has written a book which addresses issues involving childrens' cognition and memory and how they influence certain legal proceedings.

Dr. Bruck testified in detail about the scientific process which she follows in conducting her research and the advances which have occurred in the field over the last twenty years. Certain concepts and tenets have evolved from her work.

In the broadest sense, suggestive interviews with children should be avoided because they undercut the validity of the childrens' answers. Dr. Bruck itemized a number of factors which tend to create unreliable results in child interrogations including, but not limited to, the following: repeated interviews, repeated questions, rewards, punishment, stereotype induction, and peer pressure.

Dr. Bruck is familiar with the various interviews of Daniel Ardolino taken in this case. She discussed each in some detail and pointed out the flawed interview technique used by the interviewers. She was extremely critical of the officers' manner of handling of the interviews. She suggested that they bordered on abusive handling and violated virtually all of the "don'ts" which her research has established. She holds the opinion that the statements of Daniel Ardolino are patently unreliable as a result of the improper questioning.

Petitioner argues that his trial counsel should have retained Dr. Bruck or someone like her and offered her testimony at trial.

Upon cross examination, Dr. Bruck reports that she was not familiar with all of the facts of this case and whether they would corroborate or refute Daniel's statements. She asserts that it is unnecessary for her to have this information as her opinion is based wholly and satisfactorily on the four

corners of the interview. The State's attorney suggested to Dr. Bruck that the questioning was necessary to break through a powerful web of influence which the Petitioner had cast over Daniel. Dr. Bruck refused to agree with this notion. She said,

> "If children are not going to give you information, you have to respect that. You have to let go at some point. And that has consequences...".

Dr. Bruck allowed that older children are less suggestible than young ones, but could not quantify or compare the levels of suggestibility.

This court concludes that Dr. Bruck's opinion is confirmatory of what the average person would believe in the absence of expert testimony - children are susceptible to suggestion and manipulation by adults. A skillful questioner can get a child to say almost everything. This conclusion is utterly expected and intuitive.[2]

State v. Gordius 544 A.2d 309 (Me. 1988) remains the law of the land. This court sees little basis to in the instant matter to depart from its well reasoned result. While Dr. Bruck clearly has a great deal of research data and test results which would not be within the knowledge of the average juror, her conclusions do not significantly add to the common perception of people living in a society which includes children. As such, it is this court's conclusion that her testimony would not have been properly admitted at trial. As such, trial counsel cannot be faulted for failing to pursue this avenue. Indeed, the offering of testimony regarding suggestibility and manipulation would have been a questionable defense strategy.[3] See also State v. Rich, 549 A.2d 742 (Me. 1988).

---

[2] - In response to the court's questions, Dr. Bruck maintained that many of her research results were counter-intuitive. After hearing her testimony in its entirety, the court must disagree. Every opinion she offers in relation to this case could be a product simply of common sense.

[3] - One of the State's primary efforts in the case was to demonstrate the Defendant's manipulation of the children. Dr. Bruck's testimony would have provided a very plausible explanation of how the Defendant could have suggested and manipulated the boys into making the allegations of sexual abuse and Daniel's early claims regarding Daniel's alleged fall from the tree house.

Upon these facts, the court cannot find that trial counsel failed to do anything which a normal fallible attorney would do under the same circumstances. Indeed, the court cannot find that they made any errors under any standard. As such, Petitioner's Petition for Post Conviction Review must be denied.

So Ordered.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R.Civ.P Rule 79 (a).

Dated: May 14, 2001

_____
CHIEF JUSTICE, SUPERIOR COURT

ROBERT ARDOLINO VS STATE OF MAINE

DOCKET NO. CR-1998-430

ATTORNEY FOR THE STATE

WILLIAM STOKES ASST A.G.
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA   ME   04333


ATTORNEY FOR THE PETITIONER

CLIFTON FULLER, ESQ.
15 MAIN ST SECOND FLOOR
BELFAST   ME   04915


ROBERT ROSENTHAL ESQ
523 EAST 14TH STREET SUITE 8D
NEW YORK   NY   10009