STATE OF MAINE
Cumberland, ss.

BUSINESS & CONSUMER COURT
LOCATION: Portland
Docket No. BCD-CV 11-28

KAILE R. WARREN, JR.,
RENT-A-HUSBAND LLC,
RENT-A-HUSBAND ENTERPRISES,
LLC, and KW ENTERPRISES, INC.,

    Plaintiffs,

  v.

PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLC, MARCUS, CLEGG &
MISTRETTA, P.A., and ACE
HARDWARE CORP.,

    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## ORDER ON PLAINTIFFS MOTION TO AMEND COMPLAINT

Plaintiffs Kaile R. Warren, Jr., Rent-A-Husband LLC, Rent-A-Husband Enterprises, LLC, and KW Enterprises, Inc. move to amend their complaint for a third time to add two counts against Ace Hardware Corp. (Ace): breach of fiduciary duty (Count V), and violation of the Uniform Trade Secrets Act, 14 M.R.S. §§ 1541-48 (2012), (Count VI).[1] Plaintiffs assert that the facts to support these counts have been previously pleaded in their Second Amended Complaint or generated during the course of discovery. Plaintiffs further assert that their motion is not sought in bad faith or for a dilatory reason, and that Ace will suffer

---

[1] Plaintiffs' First Amended Complaint was filed on April 20, 2011, as of right. *See* M.R. Civ. P. 15(a). The Court granted Plaintiffs' motion to amend on October 25, 2012, resulting in Plaintiffs' Second Amended Complaint.

no undue prejudice from the amendment. The Court held oral argument on the motion on March 20, 2012.

After a responsive pleading is served, a plaintiff may amend its complaint "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." M.R. Civ. P. 15(a); *see also Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 21, 956 A.2d 110. "Whether to allow a pleading amendment rests with the court's sound discretion." *Holden v. Weinschenk*, 1998 ME 185, ¶ 6, 715 A.2d 915 (quoting *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 616 (Me. 1992)). Courts should freely allow an amendment to a complaint except for bad faith, dilatory tactics, or undue delay resulting in prejudice to the opponent. *Longley v. Knapp*, 1998 ME 142, ¶ 19, 713 A.2d 939. Nevertheless, a moving party must make a timely request to amend a pleading, particularly when the deadline for amendment of pleadings has passed. *See El-Hajj v. Fortis Benefits Ins. Co.*, 156 F. Supp. 2d 27, 34 (D. Me. 2001), *quoted in Davis v. Grover*, 2002 Me. Super. LEXIS 69, at *9 (Apr. 3, 2002) (Mead, J.). Further, where "a proposed amended complaint would be subject to a motion to dismiss, the court is well within its discretion in denying leave to amend." *Glynn v. City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994).

In the present case, Plaintiffs announced their intention to seek leave to amend during an argument on a discovery issue on November 1, 2012. Plaintiffs again stated their intention to file the motion to amend at a hearing on December 17, 2012. At that time, the Court observed that the success of a motion to amend was inversely related to the closeness of the trial date. Plaintiffs filed the motion to amend on January 9, 2013.

2

As Ace has noted, the proposed amendment is more than a year past the deadline of January 1, 2012, for amendment of pleadings. Plaintiffs attempt to justify that delay by arguing that the facts to support each of the proposed new claims were developed during ongoing discovery.

As to their proposed breach of fiduciary duty claim, Plaintiffs assert that as facts regarding the partnership relationship between them and Ace developed during discovery, the breach of fiduciary duties attendant in such a relationship became clear, but the Court is not persuaded. Plaintiffs have consistently asserted that they had a partnership relationship with Ace.[2] Thus, if there is indeed any basis for a breach of fiduciary claim against Ace, it was known to Plaintiffs when they filed their initial complaint in March 2011.[3] *See McIntyre v. Nice*, 2001 ME 174, ¶ 10, 786 A.2d 620. In October 2011, the Court noted that the Plaintiffs' Second Amended Complaint does not sufficiently allege a fiduciary relationship, much less a breach claim. (Oct. 25, 2011, Order at 9 n.4 ("The Plaintiffs have not established sufficient facts supporting the allegation that a fiduciary relationship existed between Plaintiffs and Ace simply because there were ongoing business discussions.").) The delay in bringing the breach of fiduciary claim forward has simply not been explained or justified.

Finally, the Plaintiffs' proposed amendments are mere recitations of the elements of the cause of action and offer no further specifics about the alleged fiduciary relationship. *See America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, -- A.3d ---; *Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 21, 738 A.2d 839. The gravamen of Plaintiffs'

---

[2] (*See* Compl. ¶¶ 79-80, 82-84, 92, 95-97, 163; Amend. Compl. ¶¶ 79-80, 82-84, 92, 95-97, 163, 219; 2d Amend. Compl. ¶¶ 45, 79-80, 82-84, 86, 90, 94-97, 108, 210.)

[3] The stay of this case for several months, during which Ace pursued an interlocutory appeal, does not affect this analysis as the amendment of pleadings deadline had already passed at that point.

dispute with and against Ace is an arms-length business deal gone south. *See America*, 2013 ME ¶ 15, -- A.3d --- (analyzing the substance of the overall complaint). *See also Clappison v. Foley*, 148 Me. 492, 497-99, 96 A.2d 325, 327-28 (1953) (noting that where the complaint does not demonstrate evidence of a fiduciary relationship, but instead only conventional business dealings, the motion to dismiss must be granted).

With respect to the trade secret claim, Plaintiffs' assertion that it was revealed only in the course of discovery that "Ace misappropriated the Plaintiffs' 'hub-and-spoke' model for Rent-a-Husband's placement in stores for itself" (M. Amend. 3) is more plausible. Nevertheless, as Plaintiffs admit, the UTSA claim is not contemplated by the previous complaints. In fact, it is a vast departure from the theories presently asserted against Ace and would open up a completely new and different set of issues between the Plaintiffs and Ace.

> As the Law Court has explained, factors relevant to
>
> determin[ing] whether the information "derives independent economic value ... from not being generally known [or] readily ascertainable," 10 M.R.S.[] § 1542(4)(A), include: (1) the value of the information to the plaintiff and to its competitors; (2) the amount of effort or money the plaintiff expended in developing the information; (3) the extent of measures the plaintiff took to guard the secrecy of the information; (4) the ease or difficulty with which others could properly acquire or duplicate the information; and (5) the degree to which third parties have placed the information in the public domain or rendered the information "readily ascertainable" through patent applications or unrestricted product marketing.

*Spottiswoode v. Levine*, 1999 ME 79, ¶ 27 n.6, 730 A.2d 166. Similarly, factors relevant to

> determin[ing] whether the information "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy," 10 M.R.S. § 1542(4)(B), include: (1) the extent to which the information is known outside the plaintiff's business; (2) the extent to which employees and others involved in the plaintiff's business know the information; (3) the nature and extent of measures the plaintiff took to guard the secrecy of the information; (4) the existence or absence of an express agreement restricting disclosure;

and (5) the circumstances under which the information was disclosed to any employee, to the extent that the circumstances give rise to a reasonable inference that further disclosure without the plaintiff's consent is prohibited.

*Id.* ¶ 27 n.7.

Trial of this case was originally set for June 2013, and it is now set for January-February 2014. The court is in the process of resetting deadlines to enable discovery, expert witness activity and dispositive motion briefing to be completed sufficiently ahead of trial to enable the parties to know what claims will be going to trial. Because the Plaintiffs' proposed UTSA claim would likely entail discovery well beyond the discovery already taken in connection with the present claims against Ace, allowing the amendment would almost certainly require further delays in this two-year-old litigation.

As an aside, the UTSA claim as pleaded in the amendment is arguably facially deficient. *See Glynn*, 640 A.2d at 1067. The complaint fails to state how the hub-and-spoke model "[d]erives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use," as required by 10 M.R.S. § 1542(4)(A) (2012).

> The Court is cognizant that leave to amend should be freely granted:

> The philosophy of the rules is that pleadings are not an end in themselves but only a means of bringing into focus the area of actual controversy. Leave to amend should be freely granted when justice so requires. A party should not be precluded by the technicalities of pleading from presenting his claim or defense on its merits unless the pleadings have misled the opposing party to his prejudice.

*Bangor Motor Co. v. Chapman*, 452 A.2d 389, 392 (Me. 1982) (quoting 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.1 (1970)). "[P]rejudice means something more than an

increased likelihood of defeat in the litigation if the amendment is granted." *Id.* (quoting 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.4 (1970)).

Undue prejudice to the opponent can occur when the newly asserted claim inserts a new issue into the case that has not been previously raised or litigated. *See id.* at 393. Similarly, the Law Court has affirmed the denial of a motion to amend to add permissive counterclaims when the request was made more than a year after the litigation between the parties began and no reasonable excuse for the delay was provided. *See Efstathiou v. The Aspinquid, Inc.*, 2008 ME 145, ¶¶ 21-22, 956 A.2d 110; *cf. Kelley v. Michaud's Ins. Agency*, 651 A.2d 345, 347 (Me. 1994) (a delay of six weeks after a party's responsive pleading is not undue delay to justify denying a motion to amend). "Although passage of time, alone, is not grounds for denying a motion to amend, 'undue delay' removes any presumption in favor of allowing amendment." *See Diversified Foods, Inc. v. First Nat'l Bank*, 605 A.2d 609, 616 (Me. 1992) (citation omitted) (concluding an intentional delay of seven months to add claims supported denial of the motion to amend).

In this case, allowing the Plaintiffs to amend again, would almost certainly cause further substantial delay, and also work undue prejudice to Ace, given the posture of the case and the lack of justification for the amendment.

Accordingly, Plaintiffs' Motion to Amend Complaint is DENIED.

Pursuant to M.R. Civ. P. 79, the clerk shall incorporate this order into the docket by reference.

Dated: March 26, 2013

A. M. Horton
Justice, Business and Consumer Court

Entered on the Docket: 3.27.13.
Copies sent via Mail ___ Electronically ✓

6

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
LOCATION: Portland
Docket No. BCD-CV-11-28

KAILE R. WARREN, JR.,
RENT-A-HUSBAND LLC,
RENT-A-HUSBAND ENTERPRISES,
LLC, and KW ENTERPRISES, INC.,

Plaintiffs,

v.

PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLC, MARCUS, CLEGG &
MISTRETTA, P.A., and ACE
HARDWARE CORP.,

Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

✓

## ORDER ON DEFENDANTS' JOINT MOTION TO COMPEL

On December 3, 2012, Defendants Preti, Flaherty, Beliveau & Pachios, LLC (Preti),

Marcus, Clegg & Mistretta, P.A. (MCM), and Ace Hardware Corp. (Ace) jointly moved to

compel production of documents from the Maine Attorney General's office as they related to

the civil and criminal prosecutions of Plaintiff Kaile R. Warren, Jr. *See* Superseding Indictment,

*State v. Warren*, CUMSC-CR-2009-9716 (Me. Super. Ct., Cum. Cty., Apr. 9, 2010). The

Attorney General asserted that both work-product privilege and deliberative process privilege

protected the documents in question.[1]

---

[1] The Attorney General also asserted work-product protection for the documents. *See* M.R. Civ. P 26(b)(3). Because, however, 1) the Defendants and the Attorney General are not adversaries in this proceeding; 2) the Defendants were not a party to the prior proceeding; and 3) the Attorney General is not a party to the present proceeding, work product protection is inapplicable. The Court does not address this argument any further.

1

The Court heard oral argument on the motion on February 3, 2012, but at that time, the deposition of Assistant Attorney General Colleran had not yet taken place. The Court instructed the parties to "proceed with the deposition of [AAG] Colleran, focusing on documents already disclosed." (CMC Order No. 2, Feb. 9, 2012, at 3.)

The parties could then re-present their arguments with more context for the Court and in light of the actual objections made at the deposition. The Colleran deposition could not be scheduled before the case was stayed pending Ace's appeal of the Court's March 12, 2012, order, which denied Ace's special motion to dismiss. Once the stay was lifted in June of 2012, the case proceeded and AAG Colleran's deposition took place on September 18, September 19, and November 5 of 2012. The parties then supplied the Court with supplemental briefing in December of 2012. The Court heard oral argument again on January 9, 2013.

One of the key issues in this case is why the Attorney General decided to forego its criminal and civil prosecutions against Kaile Warren in favor of a civil consent judgment. In a letter to Rent-A-Husband investors dated February 18, 2011, AAG Colleran wrote that the State had been investigating Warren's claim

> to have relied upon his attorneys in disclosing information to investors and drafting the promissory notes. We finally obtained documents from [Warren's] former law firm late in 2010 and received further explanatory information from them last month. This evidence has caused us to conclude that we would be unlikely to obtain criminal convictions against Mr. Warren. As a result, we have decided to pursue a civil enforcement action against Mr. Warren instead of continuing with the criminal prosecution. In civil actions, the State need not prove that Mr. Warren acted knowingly or intentionally, and the extent to which he relied upon counsel is not the obstacle it would be in a criminal case.
>
> After several weeks of discussions, we have reached an agreement with Mr. Warren under which a civil judgment will be entered against him for sale of unregistered securities and failure to disclose material facts in connection with securities transactions.

(Colleran Depo. Exh. 49.) The civil consent judgment, dated February 23, 2011, dismissed the pending criminal charges but obligated Warren, Rent-A-Husband, LLC, and KW Enterprises,

2

Inc. to pay restitution in the amount of $1,994,657.08 (plus post judgment interest at the rate of 6.30% from the date of judgment) to the State of Maine. Consent Judgment, *State v. Rent-A-Husband, LLC*, CUMSC-CV-2011-07, at ¶ 1 (Me. Super. Ct., Cum. Cty., Feb. 23, 2011) (hereinafter, "Consent Judgment).[2] The State, in turn, would distribute the restitution *pro rata* to the victims identified in the Superseding Indictment. (Consent Judgment ¶ 2.)

The Consent Judgment also required that Warren, Rent-A-Husband, and KW Enterprises "make best efforts to recover damages from any person or entity ... who might be liable to the Defendants in connection with activities that are the subject of the Superseding Indictment and the Amended Civil Complain in this matter." (Consent Judgment ¶ 3.) The Consent Judgment further required that Warren, Rent-A-Husband, and KW Enterprises "make monthly detailed reports to the State regarding these efforts" and prohibited them from settling claim unless it was on "terms acceptable to the State." (Consent Judgment ¶ 3.) Any funds recovered would go to fund the restitution and interest requirements of the Consent judgment. (Consent Judgment ¶ 3.) The Plaintiffs filed suit in this case against the Defendants less than one month after the court approved the Consent Judgment.

The Court recognizes the vital importance of the deliberative process privilege.[3] The privilege protects

> documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance

---

[2] The Consent Judgment appears in several places in the record: as Exhibit C to Plaintiffs' Complaint; as Exhibit 2 to Defendants' Joint Motion to Compel dated January 19, 2012; and attached to Defendants' supplemental briefing on the Joint Motion to Compel.

[3] Although the Law Court has not formally recognized the privilege, the court has consistently forbade inquiry "inquiry into the mental processes of administrative decision maker[s]." *Cutler v. State Purchasing Agent*, 472 A.2d 913, 918 (Me. 1984).

Defendants have not asserted that the documents are not subject to the deliberative process privilege. Instead, the parties have asserted their substantial need for the information.

the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government.

*Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001).

Nevertheless, as the Attorney General concedes, the privilege is not absolute. The documents may be disclosed if the court determines that the "plaintiff's need for the information outweighs the [agency]'s claim of privilege" and the party seeking the documents has the burden of establishing that need. *See Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984). "The interest of the party seeking disclosure tends to be strongest when the information in question is highly relevant, helpful, and unavailable from other sources." *Id.*

In the present case, the Court has limited Defendant's inquiry to documents relevant to the Attorney General's decision to indict Warren and the ultimate decision to pursue a civil consent judgment instead of a criminal case,[*] and the Court has reviewed *in camera* the documents filed by the Attorney General. The bases of the decision to indict and the decision to settle are the key causation issues in the malpractice case. Plaintiffs assert that they relied upon the advice of counsel in issuing promissory notes to raise capital for the Rent-A-Husband venture, notes that violated Maine securities laws and led to the criminal prosecution of Plaintiff Warren. Defendants assert that Plaintiff Warren made misrepresentations to investors unrelated to the advice given by Preti and MCM.

---

[*] Defendants' initial motion was quite broad, seeking the State's complete civil and criminal files regarding the prosecution of Warren and the other Plaintiffs, including notes of AAG Colleran, and the State's complete file regarding the Consent Judgment. Ostensibly, the request covered the time period from before the original indictment in 2009 through the 2011 consent judgment.

In its supplemental briefing of this issue, the Attorney General suggested that "[a]ny intrusion" into the deliberative process privilege "should be limited to documents and testimony regarding the decision to charge Warren in December of 2009 and documetns and testimony regarding the decision to resolove the case in January-February 2011." (AG's Supp. Opp'n 10.) The Court agreed and the AG filed those documents with the Court for its *in camera* review, divided into documents relevant to the indictments and documents relevant to the dismissal.

4

Much has already been produced in discovery related to the Attorney General's decision-making process,[5] and if this case were not unusual in two respects the Court would likely leave the parties to the existing discovery. The Court has reviewed the cases cited by Defendants in support of the motion and the Attorney General and in opposition to the motion, but none of these cases fully squares with facts of this case.

The two respects that set this case apart are: first, the fact that the agency decision maker has already made a substantial disclosure as to the deliberative process, as reflected in Mr. Colleran's February 2011 letter to investors, and second, the agency's initial and continuing role in this civil case, as contemplated in the Consent Judgment, despite the fact that the agency is not a party. The Consent Judgment *required* Plaintiffs to bring this action.[6] Moreover, the Attorney General is not a passive spectator in these proceedings. The Attorney General can prevent Plaintiffs from settling this action if it determines the terms are "unacceptable," an undefined, and thus highly discretionary standard.

Under the peculiar circumstances of this case, the Court concludes that the documents filed *in camera* should be produced to the Defendants. The information cannot be obtained from any other source, and its relevance and central significance to this case can hardly be overstated. The Court does not reach this decision lightly, and cautions that the analysis is highly specific to the unusual circumstances of this case. Nevertheless, Defendants have met their burden and, with one redaction for privileged information unrelated to this case in an internal memorandum,[7] the Court grants Defendant's motion to compel with respect to the documents filed *in camera*. On the other hand, based on the present record, the Court has no

---

[5] (*See* AG's Supp. Opp'n 5-6 (listing discovery already produced or adduced on this topic).)

[6] The common law has long recognized that a party may not put a communication into issue in litigation and then assert a privilege as to that communication, as is evident in modern-day privilege rules. *See, e.g.*, M.R. Evid. 502(d)(3); M.R. Evid. 503(e)(3).

[7] The documents filed in camera were not indexed or Bates stamped, but the redacted document is the first page of a memo dated March 22, 2010. The Court is redacting the first paragraph and the final, partial paragraph of that single-paged document.

intention of permitting any further inquiry into the agency decision making process. No party will be allowed to bootstrap the disclosure mandated by this Order into further discovery that would not have been allowed in the absent of the disclosure mandated by this Order. In other words, the parties will have to work with the data they have, and will get by virtue of this Order.

Consistent with the Court's order on Defendant Preti's Motion for Protection, the Court will hold the documents for twenty-two more days to afford the Attorney General the opportunity to appeal. *See Pierce v. Grove Mfg. Co.*, 576 A.2d 196, 198 (Me. 1990); *Moffett v. City of Portland*, 400 A.2d 340, 343 n.8 (Me. 1979).

Based on the foregoing, it is hereby ORDERED as follows:

1. Defendants' motion to compel is GRANTED in part, and DENIED in part. The Court GRANTS the motion with respect to the documents filed *in camera* with the court, with the exception of a redacted document described in footnote 7 of the order. The Court DENIES the motion in all other respects.

2. The Clerk will release only this Order at this time.

3. If the Attorney General files a notice of appeal within 21 days of this Order, those documents shall remain sealed until further order.

4. If no notice of appeal is filed within 21 days of this Order, or if the Attorney General alerts the Clerk that it intends to file no such notice, the Clerk shall provide copies of the documents described in paragraph 1(a) to the parties. The unredacted, partially-privileged document shall remain sealed.

5. The documents that are the subject of this order shall be subject to the parties' existing Confidentiality Order.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: March 12, 2013

A. M. Horton
Justice, Business & Consumer Court

Entered on the Docket: 3.12.13
Copies sent via Mail ___ Electronically ✓

6

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
LOCATION: Portland
Docket No. BCD-CV 11-28

KAILE R. WARREN, JR.,
RENT-A-HUSBAND LLC,
RENT-A-HUSBAND ENTERPRISES,
LLC, and KW ENTERPRISES, INC.,

        Plaintiffs,

        v.

PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLC, MARCUS, CLEGG &
MISTRETTA, P.A., and ACE
HARDWARE CORP.,

        Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## ORDER ON ACE'S MOTION TO DISMISS COUNT VIII

On October 16, 2012, the Court issued an order on several pending discovery motions. As part of that order, the Court required Plaintiffs to "supplement their responses to interrogatories 4, 5, and 6 of Ace's first set of interrogatories regarding alleged misrepresentations by Ace" by November 9, 2012. (Disco. Order 1.) The Court ordered that Plaintiffs specify "1) each allegedly false statement, 2) who made the statement and to whom the statement was made, 3) when it was made, 4) how the statement was conveyed to Plaintiff, and 5) what about the statement was false." (Disco. Order 1.) Plaintiffs supplemented their interrogatories to Defendant Ace Hardware Corp. (Ace) on November 9, 2012. Ace now moves, pursuant to M.R. Civ. P. 9(b) and 41(b)(2), for involuntary dismissal of Count VIII (intentional misrepresentation) of the Plaintiffs' Second Amended Complaint for failure to comply with the Maine Rules of Procedure and the Court's October 16, 2012, discovery order.

In the alternative, Ace requests the Court order that Plaintiffs' fraud claims are limited to those statements that are sufficiently particular in Plaintiffs supplemental interrogatory responses.

Broadly, Ace asserts that despite two amendments of Plaintiffs' complaint,[1] Plaintiffs' first responses to Ace's interrogatories, and a court-ordered supplementation of those responses, Ace still lacks sufficient notice of all the particulars of the allegedly false statements, most notably, what about those statements Plaintiffs consider to be false. Ace does not substantively challenge the sufficiency of the pleadings pursuant to M.R. Civ. P. 12 or the sufficiency of the evidence pursuant to M.R. Civ. P. 56. Rather, Ace "seeks to dismiss or limit the Plaintiffs' fraud claim because it is impossible for Ace to determine what fraud allegations it must defend itself against."

Plaintiffs' opposition to the motion asserts that Ace's motion is premature, as discovery is ongoing and Plaintiffs have not yet deposed several Ace executives. Plaintiffs assert that Ace is "attempting to limit discovery on the issue of fraud to what has been provided through Plaintiffs' interrogatory responses" and granting Ace's motion would unfairly foreclose Plaintiffs from developing facts through discovery.

Rule 41(b) stems from the inherent authority of the trial courts to "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Westbrook v. Wallace*, 478 A.2d 687, 689 (1984) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962)). Thus, pursuant to Me. R. Civ. P. 41(b)(1), a trial court may dismiss an action *sua sponte* for failure to prosecute a case, encompassing a broad range of circumstances from instances where no action has been taken in a case for two years or when a plaintiff's attorney fails to appear at trial. *See Westbrook*, 478 A.2d at 689-90. Similarly, Rule 41(b)(2) authorizes a trial judge, on motion by a defendant, to dismiss any claim against the defendant for failure to prosecute or "failure . . . to

---

[1] Currently pending before the Court is Plaintiffs motion to amend their complaint for a third time, but not in any way that affects the present motion. Ace opposes the motion to amend.

2

comply with the[ civil] rules or any order of court." Nevertheless, the Law Court has cautioned that "[s]uch power should be exercised only with full appreciation and consideration of the plight of the plaintiff" and the "values underlying our system of justice which favors resolution on the merits." *Wallace*, 478 A.2d at 690; *accord State v. Bowring*, 490 A.2d 667, 669 (Me. 1985) ("A court should exercise its inherent power to dismiss only when the party bringing the action has failed to fulfill its duty to the court").

Ace's motion is not grounded upon lack of prosecution; rather, Ace seeks dismissal of Count VIII of Plaintiffs' second amended complaint because Plaintiffs failed to comply with the court's mandate that Plaintiffs supplement their responses to Defendant's interrogatories. Ace asserts that Rule 41(b)(2) is a vehicle for defendant to dismiss a plaintiff's claim for failing to comply with an order or rule designed to put them on notice of the particulars of the claim.

While this may be true in federal cases, *see, e.g., Angulo-Alvarez v. Aponte*, 170 F.3d 246, 251-52 (1st Cir. 1999); *Abdullah v. Acands, Inc.*, 30 F.3d 264, 269-70 (1st Cir. 1994), the Law Court has been more cautious, requiring fair notice of the risk of dismissal to a plaintiff for failure to comply with the court's order, *see Miller v. Perry*, 468 A.2d 981, 983 (Me. 1983). The case cited by Ace, *Nevijel v. North Coast Life Insurance Co.*, 651 F. 2d 671 (9th Cir. 1981), is consistent with necessitating notice to a plaintiff that continued failure to comply with a court's order will result in dismissal.

Further, dismissal for failure to properly plead a cause of action is more appropriately directed to a Rule 12 motion than a Rule 41 motion. *See Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124 (9th Cir. 2008) (concluding the rule 41 dismissal of a plaintiff's 68-page first amended complaint solely for the failure to satisfy the "short and plain statement standard" was an abuse of discretion); *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (concluding the trial

3

court abused its discretion when, it dismissed plaintiff's claim for failure to comply with a court order that required a complaint that "substantially exceeded the requirements of Rule 8").

Nevertheless, the Court has reviewed Plaintiffs' supplemental interrogatories and finds that they are not in compliance with the court's discovery order. The Court agrees with Ace that Plaintiffs have still failed to identify what about each particular statements Ace made was false at the time it was conveyed to Plaintiffs. Although "Maine is a notice pleading state, . . . only requir[ing] a short and plain statement of the claim to provide fair notice of the cause of action," *Johnston v. Me. Energy Recovery Co.*, 2010 ME 52, ¶ 16, 19 A.3d 823, fraud is a special matter that must be plead in more detail than a general matter. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake *shall be stated with particularity.* Malice, intent, knowledge, and other condition of mind of a person may be averred generally." M.R. Civ. P. 9(b) (emphasis added); *cf.* M.R. Civ. P. 8.

The requirement to plead fraud with particularity is to ensure "the defendant is fairly apprised of the elements of the claim." 2 Harvey, *Maine Civil Practice* § 9:2 at 384 (3d ed. 2011). Notably, pleading fraud with particularity is not a new requirement in Maine. Any party

> seeking relief on the ground of fraud, accident or mistake, must directly charge the grounds relied upon. The statement should be so full and explicit as to show the court a clear picture of the particulars of the fraud, -- the manner in which the party was misled, or imposed upon, -- the character and causes of the accident, or mistake, and how it occurred. Without such a statement . . . the court can not grant relief or even hear evidence in the matter.

*Semo v. Goudreau*, 147 Me. 17, 20-21, 83 A.2d 209, 211 (1951).

Plaintiffs assert that their fraud claim has been stated with sufficient particularity, but the Court disagrees. The Court ordered that Plaintiffs specify "1) each allegedly false statement, 2) who made the statement and to whom the statement was made, 3) when it was made, 4) how the statement was conveyed to Plaintiff, and 5) what about the statement was false." (Disco. Order 1.) The Court's review of the supplemental interrogatories filed by Plaintiffs leads the

4.

Court to conclude, similar to Ace, that Plaintiffs allegations of fraud are at best unclear and at worst incoherent and intentionally vague. Rather than providing a clear statement comporting with the Court's order, Plaintiffs submitted a rambling narrative of non-sequential events that fails to satisfy the Court's mandate—which was essentially a restatement of the requirements of Rule 9(b). In any event, the responses to do not provide Ace with a fair apprisal of the basis of Plaintiffs' fraud claim.

The Court is left with the dilemma of how to reconcile Plaintiffs' noncompliance with its order and their insufficient pleading with the Ace motion that does not challenge the sufficiency of the Plaintiffs' pleading. The Court had intended to order Plaintiffs once again to provide a concise recitation of the circumstances of each allegedly false representation Ace made in a standardized format,[3] but such an order affords Plaintiffs an opportunity to which they are not entitled, given the late stage of the proceedings and their repeated noncompliance with the pleading requirements of a fraud claim.

Instead, the Court will permit Ace to make an appropriate motion regarding the sufficiency of the pleadings. Plaintiffs have been amply advised in this matter that the supplementation to their interrogatory responses would define the scope of their fraud claim.

---

[3] To avoid any confusion about what is necessary to comply with M.R. Civ. P. 9(b), the Court provides the following format and an example based on *Gorman v. Maine Eye Care Associates, P.A.*, 2008 ME 36, 942 A.2d 707:

I.   Alleged misrepresentation

- Who said it and to whom
- When it was made
- How the statement was conveyed
- What about the statement is false at the time it was made

A.   Dr. Gorman told MECA that she and her partner would buy the MECA practice.

- Dr. Gorman said this to the principals of MECA
- September of 2000
- In person
- Dr. Gorman and her partner did not in fact want to purchase the practice at the time she said it.

5

(Disco. Order 1 ("what claims Plaintiffs will be permitted to present to the jury will be defined by the pleadings, as illuminated or clarified by discovery responses").) *See also Semo*, 147 Me. at 20-21, 83 A.2d at 211. Plaintiffs have supplemented their interrogatory response and in fairness to Ace the Court will not permit any further supplementation, alteration, or clarification, regardless of developments in discovery. The status of the fraud claim is the state of the allegations within the Second Amended Complaint and the interrogatory responses as of the date of this Order.

Ace's motion to dismiss pursuant to M.R. Civ. P. 41 is hereby denied without prejudice to its renewal through a motion pursuant to M.R. Civ. P. 12 and/or 56.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order in the docket by reference.

Dated: March 12, 2013

A.M. Horton
Justice, Business and Consumer Court

6